IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
  )
       Plaintiff, )
  ) CIVIL ACTION NO.  WMN-01-2872
     v. )
  )
WARFIELD-ROHR CASKET )
COMPANY, INC. )
  )
       Defendant. )
_____)

## PROPOSED PRETRIAL ORDER

_____In accordance with the prior Orders of this Court and Local Rule 106 of the Local Rules

for the United States District Court for the District of Maryland, Plaintiff Equal Employment

Opportunity Commission ("EEOC"), hereby submits the following proposed Pre-Trial Order.

**I.**      **EEOC's Statement of Facts and Legal Theories Regarding EEOC's Claims**

_____In this action, EEOC alleges that Defendant violated the Age Discrimination in

Employment Act, as amended, 29 U.S.C. § 601 et seq. ("ADEA").  The complaint alleges that

Defendant violated the ADEA by firing Frederick Kuehnl, then age 56 years, because of his age.

EEOC seeks back pay, front pay, prejudgment interest, liquidated damages, and injunctive relief.

      **A.**      **Brief Statement of Facts**

      1.      Frederick Kuehnl worked as a casket trimmer since about 1964.

_____2.      In 1971, Warfield-Rohr hired Mr. Kuehnl as a casket trimmer.

      3.      As a casket trimmer, Mr. Kuehnl custom-designed and built casket interiors.  His

work consisted of designing, cutting, and installing wood and fabric trim beneath and around the interior bed of the casket.

4.      During his employment at Warfield-Rohr, Mr. Kuehnl was a highly-skilled craftsman who did very good work.

5.      In 1982, William Ayres, the owner of Warfield-Rohr, promoted Mr. Kuehnl to the position of foreman. As foreman, Mr. Kuehnl continued to work as a casket trimmer with the additional responsibility of supervising and training sewers and apprentice casket trimmers.

6.      Mr. Kuehnl also performed odd jobs for the company and personal jobs for Mr. Ayres and members of Mr. Ayres' family, both on and off company time.

7.      Mr. Kuehnl kept contemporary logs of his hours of work and work performed.

8.      Mr. Ayres often complimented Mr. Kuehnl on his work ethic, stating that he was from the "old school," working "from morning to night."

9.      Although Mr. Kuehnl never received a written, formal performance evaluation, he received a year-end bonus and cost of living increase every year he worked for Defendant.

10.     Over the years, Defendant's trimming work declined, and by 1997 there were only three employees remaining in the trimming room: two casket trimmers, Mr. Kuehnl and Mr. Michael Eisenhardt, and one sewer, Ms. Elizabeth Skenderovic.

11.     In December 1997, Mr. Eisenhardt resigned, but was replaced by Matt Moore, then age 33, who had limited experience in furniture upholstering but had never worked as a casket trimmer.

12.     Mr. Kuehnl was the individual who taught Mr. Moore everything about casket trimming.

2

13.     Mr. Kuehnl was more productive than Mr. Moore and remained on call to perform rush orders.  While Mr. Kuehnl could trim six or seven caskets in a day, Moore could not trim more than one.

14.      On April 7, 2000, Mr. Ayres asked Mr. Kuehnl how old he was and when he planned to retire.

15.     Just three weeks after the April 7th conversation, on April 28, 2000, Mr. Ayres fired Mr. Kuehnl.   Mr. Ayres told Mr. Kuehnl that he was too old, and made too much money and that he was retaining Mr. Kuehnl's younger co-worker (Mr. Moore) because he "could give him more years."

16.     In response to Mr. Aryes' reasons for firing him, Mr. Kuehnl offered to work fewer hours or to work for less money.

17.     Mr. Ayres was the sole decision maker in the decision to fire Mr. Kuehnl and never considered cutting Mr. Kuehnl's pay or work hours, even after Mr. Kuehnl offered to work fewer hours or to work for less money.

18.      Defendant's decision to fire Mr. Kuehnl because of his age was a willful violation of the ADEA because Defendant knew or showed reckless disregard for  whether its conduct was  prohibited by the ADEA

**B.     Legal Theory – Age Discrimination**

EEOC  intends to prove that Defendant discharged Mr. Kuehnl based on his age, 56 through both direct and circumstantial evidence.  EEOC can establish its case through direct evidence, that is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision."  See Fuller

v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995).  EEOC will present direct evidence – in the form

of the testimony of Mr. Kuehnl –  that the reason he was fired was because he was too old and

that Mr. Moore could give the company more years.  Because EEOC can establish by direct

evidence that Defendant's decision to fire Mr. Kuehnl was based, at least in part, on a

discriminatory motive, Defendant can avoid liability only if it can prove that it would have made

the same decision if the discriminatory factor had not been considered.  Price Waterhouse v.

Hopkins, 490 U.S. 228, 252 (1989).  Defendant is hard pressed to make such a showing as it

summarily rejected Mr. Kuehnl's offer to accept less money for continued employment.

EEOC will also present circumstantial evidence that Defendant fired Mr. Kuehnl because

of his age.  In this regard, EEOC will establish that Mr. Kuehnl was 56 (in the protected age

class), that he was performing his job duties at a level that met Defendant's legitimate

expectations at the time of his discharge, and Mr. Kuehnl's duties were assumed by Mr. Moore,

age 34 – outside the protected class.  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d

277, 284-85 (4th Cir. 2002) (en banc); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607

(4th Cir. 1999)  Indeed, Matt Moore, age 34, assumed all of the duties of casket trimming,

previously performed by Mr. Kuehnl.

**II**      **Defendant's Statement of Facts and Legal Theories**

**A.      Defendant's Statement of Facts**

Defendant, Warfield-Rohr Casket Company, Inc. ("Warfield-Rohr") is a small, family

owned wholesale distributor of burial caskets.  As part of its business over the years, Warfield-

Rohr has installed custom interiors in caskets for certain customers.  Warfield-Rohr refers to this

installation process as "trimming" a casket.  In 1971, Frederick Kuehnl was hired by Warfield-

Rohr to trim caskets. At that time, there were approximately thirteen people working in the casket trimming room at Warfield-Rohr. The work in the trimming room is organized into two basic categories: sewing and trimming. The sewers prepare the fabric materials utilized in the casket trimming, and the trimmers install the interior of the casket. Mr. Kuehnl originally was hired solely as a casket trimmer.

In 1982, Mr. Kuehnl became the working foreman of the casket trimming room and was converted from an hourly employee to a salaried employee. As foreman, Mr. Kuehnl supervised both the sewing and trimming work performed in the casket trimming room. Mr. Kuehnl was also still required to trim caskets himself. Over the years, the work in the casket trimming room decreased substantially, as did the need for employees in the trimming room.

By the beginning of 1998, there were only three people working in the casket trimming room: Mr. Kuehnl, a trimmer (Michael Eisenhardt), and a seamstress (Elizabeth Skenderovic). When Mr. Eisenhardt quit in January, 1998, due to disagreements with Mr. Kuehnl, Howard Ayres, President of Warfield-Rohr, told Mr. Kuehnl that he did not want to replace Mr. Eisenhardt because he believed that the trimming room could be operated with only one other employee, Ms. Skenderovic. Mr. Kuehnl disagreed, and told Mr. Ayres that he needed a third person in the casket trimming room, and that he wanted to hire someone to replace Mr. Eisenhardt. Ultimately, Mr. Ayres relented and agreed to hire a replacement for Mr. Eisenhardt.

In March 1998, Matthew Moore was hired as a casket trimmer to replace Mr. Eisenhardt. Within six to eight months, Mr. Kuehnl had fully trained Mr. Moore. Mr. Moore, however, did not get along with Mr. Kuehnl. In fact, many co-workers over the years did not get along with

Mr. Kuehnl, including Mr. Moore's predecessor, Mr. Eisenhardt, who quit because of the manner

in which Mr. Kuehnl treated him.  Another casket trimmer, Harry Warthen, had also quit because

of Mr. Kuehnl.  Prior to Mr. Kuehnl's termination, the morale in the casket trimming room had

deteriorated to the point where both Mr. Moore and Ms. Skenderovic were planning to quit

because of Mr. Kuehnl.

At this same time, Warfield-Rohr's sales and profitability had declined substantially.  For

the year ending in December, 1997 (just prior to Mr. Eisenhardt quitting), Warfield-Rohr had

sales of approximately $10.4 Million Dollars, and income from operations of approximately

$275,000.  By December 1999, sales had dropped more than 20% to approximately $8 Million

Dollars, and income from operations had plummeted over 75%, to approximately $66,000.  As a

result, the company decided that overhead needed to be cut.  To that end, in 2000, Warfield-Rohr

terminated two employees:  an under-performing salesman and Mr. Kuehnl.  Prior to Mr.

Kuehnl's termination, Warfield-Rohr had 23 full-time employees.  The termination of two

employees in 2000 constituted almost a 10% reduction of its work force.

Mr. Kuehnl was selected for termination for several reasons.  As Mr. Ayres had

recognized in 1998, the casket trimming room had become only a two person operation.  When

Mr. Ayres had explained this to Mr. Kuehnl after Mr. Eisenhardt had quit in 1998, Mr. Kuehnl

insisted that a third person be hired, namely, Mr. Moore.  Between the time when Mr. Moore was

hired and 2000, Mr. Kuehnl's relationship with Warfield-Rohr management (and particularly Mr.

Ayres) deteriorated.  Due to Mr. Kuehnl's refusal to accept the fact the trimming room had

become a two person operation, the company's need to cut costs, and Mr. Kuehnl's alienation of

company management, as well as the two people who were actually performing the majority of

6

the work in the casket trimming room – both of whom were contemplating quitting – Warfield-Rohr had little choice but to terminate Mr. Kuehnl.  Mr. Kuehnl was not replaced and no one served as foreman of the trimming room after Mr. Kuehnl's termination.  Mr. Kuehnl's position, therefore, was eliminated.

Approximately ten months after his termination, Mr. Kuehnl filed a charge with the EEOC claiming that he was discriminated against because of his age.  On September 25, 2001, the EEOC filed this action alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b) (the "ADEA").

The basis of the EEOC's claim is that Mr. Ayres purportedly told Mr. Kuehnl that he was "too old" and "made too much money" when Mr. Ayres terminated Mr. Kuehnl.  Mr. Ayres and Warfield-Rohr deny that Mr. Kuehnl was told that he was being terminated because of his age. In fact, age had nothing to do with Mr. Kuehnl's termination.  He was terminated for the reasons listed above.

In addition, even if the EEOC were able to prove that Warfield-Rohr discriminated against Mr. Kuehnl – which it will not be able to do – it would still not be entitled to the relief which it is seeking because Mr. Kuehnl failed to mitigate his damages and made no meaningful effort to find other employment.

### C.    Defendant's Legal Theories.

1.    The EEOC's claim of direct evidence of discrimination is not credible;

2.    Without direct evidence, Warfield-Rohr need only show the existence of non-discriminatory and non-pretextual reasons for terminating Mr. Kuehnl under the <u>McDonnell Douglas</u> test.  <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316-17 (4th Cir. 1993).  The evidence will show that Warfield-Rohr had several non-discriminatory and non-pretextual reasons for terminating Mr. Kuehnl.

3.    Even if the jury were to believe that there was direct evidence of discrimination, the EEOC still cannot prevail because the overwhelming evidence will show that Warfield-Rohr would have terminated Mr. Kuehnl in the absence of any purported discriminatory motive. <u>Burns v. Gadsden State Community College</u>, 908 F.2d 1512, 1518 (11th Cir. 1990).

4.    Even if the jury were to believe that Warfield-Rohr discriminated against Mr. Kuehnl, the EEOC still would not be entitled to the relief sought because Mr. Kuehnl failed to mitigate his damages by attempting to find another job.  <u>EEOC v. Service News Company</u>, 898 F.2d 958, 963-64 (4th Cir. 1990).

## III.    **Statements as to any Counterclaim, Crossclaim or Third-Party Claim**

There are no such claims in this action.

## IV.    **Amendments Required of the Pleadings**

Defendant requests that its Answer be amended to add Mr. Kuehnl's failure to mitigate damages as an affirmative defense.  Mitigation has been the subject of discovery and prior motions.

V.    **Any Issue in the Pleadings that is to be Abandoned**

The parties are not aware of any issue in the pleadings that is to be abandoned.

VI.    **Stipulations of Fact and/or Requested Stipulations of Fact**

A.    **EEOC's Requested Stipulations of Fact**

1.    Mr. Kuehnl was all times pertinent to this action an employee of the Defendant within the meaning of 29 U.S.C. §630(f).

2.    Defendant was at all times pertinent to this action an employer within the meaning of 29 U.S.C. §630(b) and (f).

3.    The Court has jurisdiction over the subject matter of this action and over the parties.

4.    The EEOC is an agency of the United States charged with the administration, interpretation, and enforcement of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

5.    Mr. Kuehnl mitigated his damages in this case.

6.    The total amount of Mr. Kuehnl's back pay is $378,427.47, including interest through February 28, 2005.

7.    The amounts of discounted lost pension calculated for each year from the date of his intended retirement at 65 (September 1, 2008) to the end of his expected life (August, 2021) for Mr. Kuehnl would be $ 50,928.41.

VII.    **Details of the Damages and Other Relief Sought by EEOC**

1.    As a result of Defendant's termination of Mr. Kuehnl, he is entitled to an award of back pay with interest, resulting from the denial of salaries and employee benefits from May 1,

2000 through February 28, 2005.  He would, if not reinstated, also be eligible to receive front pay

which represents the future salaries and employee benefits until he reaches 65 years of age.  In

addition, he would be eligible for lost pension from date of retirement to the end of his life

because the termination shortened his time of service and lowered his compensation.

2.      As a result of Defendant's termination of Mr. Kuehnl because of his age, and

because Defendant's termination was willful and committed in reckless disregard of his federally

protected ADEA rights,  Mr. Kuehnl is entitled to an award of liquidated damages.

3.      As a result of Defendant's termination of Mr. Kuehnl because of his age,

Defendant should be enjoined from engaging in any practice that discriminates against employees

or applicants on the basis of their age.  Defendant should also be ordered to post at their facility,

for a period of three years, a notice advising their employees and potential employees of the

findings of this Court.

4.      EEOC is entitled to its costs incurred in this action.

**VIII.  Exhibits**

A.      The following is a list of exhibits which the EEOC may offer into evidence at

trial.

1.      Mr. Kuehnl's Charge of Discrimination No.120-A1-0484, dated February 20,

2001

2.      Mr. Kuehnl's work journals

3.      Excerpt from tape recorded statements by Howard Ayres taken in connection with

EEOC investigation of Mr. Kuehnl's claim of discrimination (audio preferred,

written backup)

4.    Defendant's document nos. WR000055- WR000076 relating to Warfield Rohr

pension plan

5.    Dr. Sovan Tun's damage calculations report and attachments with amendments.

6.    EEOC Determination Letter, dated July 12, 2001.

7.    ADP Earnings Statement for Mr. Kuehnl, dated 12/15/95

8.    ADP Earnings Statement for Mr. Kuehnl, dated 12/20/96

9.    ADP Earnings Statement for Mr. Kuehnl, dated 12/19/97

10.   ADP Earnings Statement for Mr. Kuehnl, dated 12/18/98

11.   ADP Earnings Statement for Mr. Kuehnl, dated 12/22/99

12.   List of places Mr. Kuehnl sought employment after termination by Defendant

13.   EEOC Failure of Conciliation Letter, dated August 28, 2001

14.   Any exhibit identified by Defendant

**B.    Warfield-Rohr Casket Company, Inc.'s Exhibit List**

1.    Warfield-Rohr Statements of Income and Retained Earnings for the Years Ended
December 31, 1999 and 1998 and 1998 and 1997

2.    Warfield-Rohr Pension Plan Employee Census as of 1/1/01

3.    Howard Ayres Handwritten Notes - Ayres Deposition Exhibit 10

   **EEOC objects on grounds of authenticity and Rule 802, Hearsay**

4.    Kuehnl Charge of Discrimination

5.    Kuehnl Handwritten Notes from 4/28/00

   **EEOC objects on grounds of authenticity and Rule 802, Hearsay**

6.    Job Search List – Kuehnl Deposition Exhibit 2

7.     Job Search List – Kuehnl Deposition Exhibit 89

8.     Letter dated October 13, 2000 from Maryann Cohea to W. Howard Ayres

**EEOC objects on the following grounds: Rule 408, Compromise and Offers to Compromise and Rule 802**

9.     Memo from W. Howard Ayres dated November 26, 1999

**EEOC objects on grounds that exhibit is hearsay and inadmissible**

10.    List of Caskets Trimmed -Ayres Deposition Exhibit 5

11.    Unemployment Filing - Ayres Deposition Exhibit 14

12.    Warfield-Rohr reserves the right to use any exhibits identified by Plaintiff.

IX.    **Witnesses**

       A.     **EEOC's Expected Witness List**

1.     Mr. Frederick W. Kuehnl
       12 Egret Rd., Swann Estates
       Selbyville, DE 19975
       (302) 436-7376

2.     Dr. Sovan Tun
       EEOC
       1801 L Street, N.W.
       Washington, D.C. 20507
       (202) 663-4796

EEOC further may call the following additional witness:

3.     Mr. James Norris
       EEOC
       10 S. Howard Street, Suite 3000
       Baltimore, MD 21201
       (410 962-0602

4.     EEOC may also call any witness listed by the Defendant and may rely upon any
       subpoena which the Defendant may cause to be issued for a witness or upon the

appearance at trial of any witness.

**B.    Defendant's Witness List For Its Case-In-Chief**

1.    Michael Osmeyer, c/o Warfield-Rohr Casket Company, 901 West Patapsco Avenue, Baltimore, MD 21230, (410) 539-6907

2.    John Rosenberger, c/o Warfield-Rohr Casket Company, 901 West Patapsco Avenue, Baltimore, MD 21230, (410) 539-6907

3.    Marsha Ayres, c/o Warfield-Rohr Casket Company, 901 West Patapsco Avenue, Baltimore, MD 21230, (410) 539-6907

4.    Elizabeth Skenderovic, c/o Warfield-Rohr Casket Company, 901 West Patapsco Avenue, Baltimore, MD 21230, (410) 539-6907

5.    Matthew Moore, c/o Warfield-Rohr Casket Company, 901 West Patapsco Avenue, Baltimore, MD 21230, (410) 539-6907

6.    Michael Eisenhardt, 2046 Whistler Avenue, Baltimore, MD

7.    Orva Kencel, 528 North Kenwood Avenue, Baltimore, MD

8.    George Taylor, Aris Pension Services, 270 Walker Drive, Suite 200, State College, Pennsylvania 16801, (814)231-3710

9.    Karl Silex, Clifton Gunderson, LLP, 9515 Deereco Road, Timonium, MD 21093, (410) 453-5591

10.    All Witnesses listed by Plaintiff

**X.    Expert Witnesses**

**A.    Plaintiff's Expert**

EEOC will call Dr. Sovan Tun as an expert to testify on the issue of damages.

**B.    Defendant's Expert Witnesses**

Defendant does not anticipate calling any expert witnesses. Mr. Taylor and Mr.

Silex may be called as hybrid witnesses.

XI.    **Deposition Designations**

  A. **EEOC makes the following counter-designations in the deposition of Howard**

**Ayres:**

   1.  Page 10, lines 20 -21

   2.  Page 11, lines 1- 5

   3.  Page 18, lines 19 -21

   4.  Page 19, lines 1- 7

   5.  Page 30, lines 17-21

   6.  Page 31, lines 1 -5

   7.  Page 57, lines 9 -14

   8.  Page 127, lines 15 -21

   9.  Page 128, line 1

   10.  Page 128, lines 7 -8

   11.  Page 128,  lines 14 -21

   12.  Page 129, lines 1 -16

   13.  Page 131, lines 7 -20

   14.  Page 132, lines 4 -19

   15.  Page 231, lines 2 -10

   16.  Page 233, lines 15- 17

   17.  Page 234, lines 2 -7

   18.  Page 260, lines 3 -9

**EEOC designates the following excerpt of Mr. Ayres' audio-taped interview**

**with EEOC Investigator James Norris**:

JN     Mr. Kuehnl allege that a few weeks prior to his discharge you had a conversation with him regarding his age and being to old in the position. What's your response to that?

HA     I known for Mr. Kuehnl (inaudible) age, I didn't have to ask him how old he was... I know how old he is....he is completely (inaudible)... and I ... this is not about age.

CH     I think you should also say whether or not you had a conversation with that?

HA     I don't remember

June 15, 2001 Audio Tape Transcript, page 4, lines 23 - 29.

**B.     Deposition Testimony To Be Offered In Defendant's Case-In-Chief**

Deposition of W. Howard Ayres:

| PAGE | LINE | | PAGE | LINE |
|------|------|---|------|------|
| P. 32 | L. 17 | — | P. 34 | L. 20 |
| P. 38 | L. 5 | — | P. 39 | L. 2 |
| P. 49 | L. 5 | — | P. 56 | L. 11 |
| P. 73 | L. 5 | — | P. 81 | L. 13 |
| P. 85 | L. 20 | — | P. 90 | L. 2 |
| P. 94 | L. 17 | — | P. 96 | L. 8 |
| P. 110 | L. 7 | — | P. 124 | L. 21 |
| P. 130 | L. 4 | — | P. 130 | L. 8 |
| P. 133 | L. 19 | — | P. 134 | L. 15 |
| P. 136 | L. 13 | — | P. 137 | L. 15 |
| P. 138 | L. 11 | — | P.139 | L. 9 |
| P. 149 | L. 17 | — | P. 151 | L. 4 |
| P. 153 | L. 21 | — | P. 154 | L. 19 |
| P. 168 | L. 1 | — | P. 171 | L. 9 |
| P. 174 | L. 20 | — | P. 199 | L. 15 |
| P. 205 | L 3 | — | P. 230 | L. 18 |
| P. 234 | L. 6 | — | P. 241 | L. 2 |

15

| P. 267 | L. 9 | — | P. 270 | L. 1 |
| P. 273 | L. 8 | — | P. 275 | L. 16 |
| P. 281 | L. 9 | — | P. 285 | L. 18 |
| P. 291 | L. 10 | — | P. 296 | L. 5 |
| P. 341 | L. 17 | — | P. 343 | L. 15 |

Defendant makes the following additional designations for the deposition testimony of Howard Ayres:

1.   P. 127 L. 5-13

2.   P. 129 L. 17-18

3.   P. 130 L. 1-8

4.   P. 132 L.20 - P. 133  L. 13

5.   P. 231 L. 10 - P.234  L. 5

6.   P. 260 L. 10-16

Defendant reserves the right to make additional designations if Plaintiff makes any designations.

**C.     EEOC's objects and moves to strike the following of  Defendant's deposition designations of Howard Ayres:**

1.   Page 85, lines 20 -21: hearsay, lack of foundation

2.   Page 86, lines 1 -11: hearsay, lack of foundation

3.   Page 86, lines 19 -21: hearsay

4.   Page 87, lines 1 -5: hearsay

5.   Page 87, lines 11 -21: hearsay

6.   Page 88, entire page: hearsay

7.   Page 89, lines 1 - 9: hearsay

8.   Page 89, lines 21 -22: irrelevant, hearsay

9.   Page 95, lines 13 - 16: lack of foundation

10.   Page 95, lines 17- 21: hearsay

16

11.     Page 96, lines 1 -18: hearsay

12.     Page 116, lines 18 -21: irrelevant and prejudicial

13.     Page 117, lines 1 -7: irrelevant and prejudicial

14.     Page 120, lines 19 -21: lack of foundation, hearsay

15.     Page 121, lines 1 -15: lack of foundation, hearsay

16.     Page 127, lines 5 -13: speculation

17.     Page 132, line 20 - Page 133, line 13: speculation

18.     Page 168, line 1 - Page 171, line 9: irrelevant

19.     Page 174, lines 20 -21: irrelevant, hearsay

20.     Page 175, lines 1 -10: irrelevant hearsay

21.     Page 177, lines 20 -21: colloquy between counsel

22.     Page 178, lines 1 -4: colloquy between counsel

23.     Page 178, lines 15 - 21: hearsay, irrelevant

24.     Page 179, lines 1-2: hearsay

25.     Page 183, lines 21 - 184, line 3: hearsay, irrelevant

26.     Page 187, line 18- Page 188, line 1: speculation

27.     Page 191, lines 18- 21: hearsay, irrelevant

28.     Page 192, lines 1- 5: hearsay

29.     Page 192, lines 6 -19: colloquy between counsel and witness

30.     Page 192, lines 20 -21: hearsay

31.     Page 193, lines 1 - 21: double hearsay

32.     Page 194, lines 1 -5: hearsay

33.     Page 194, lines 1- 17: double hearsay

34.     Page 205, lines 3 - 12: hearsay

35.    Page 207, lines 15 - 18: lack of foundation, hearsay

36.    Page 207, lines 19 -21: hearsay

37.    Page 208, lines 1- 14: hearsay

38.    Page 208, lines 15 -18: hearsay

39.    Page 211, lines 9-11: hearsay

40.    Page 213, lines 16-17: hearsay

41.    Page 215, lines 11- 18: hearsay

42.    Page 231, line 18 - Page 232, line 9: colloquy between counsel and witness

43.    Page 235, lines 3 -6: hearsay

44.    Page 291, lines 10 -20: hearsay

## XI.    Other Pre-Trial Relief

As Defendant did not have ample opportunity to object to EEOC's exhibits and counter-designations, EEOC does not object to Defendant making such objections, if any, at a later date. EEOC will move to exclude the testimony of Marsha Ayres, George Taylor, and Karl Silex. Additionally, the Parties may submit other motions in limine

Respectfully submitted,

FOR DEFENDANT:                           FOR PLAINTIFF:

          /s/

CHARLES S. HIRSCH, ESQ.                  GERALD S. KIEL

Ballard Spahr Andrews & Ingersoll, LLP   Regional Attorney

300 East Lombard Street, 19th Flr.

Baltimore, MD 21202-3268                 DEBRA M. LAWRENCE

(410) 528-5600                           Supervisory Trial Attorney

                                                   /s/

                                         REGINA ANDREW

                                         Trial Attorney

18

EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
Baltimore District Office
10 S. Howard, 3rd Floor
Baltimore, Maryland  21201
(410) 962-4220