ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

|  |  |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | * <br> * <br> * <br> * |
|  | * Civil Action No. WMN-01-2872 |
| Plaintiff, | * <br> * |
|  | * |
| v. | * <br> * |
| WARFIELD-ROHR CASKET COMPANY, INC. | * <br> * <br> * |
|  | * |
| Defendant. | * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S ANSWER TO EEOC'S FIRST SET OF INTERROGATORIES

Defendant, Warfield-Rohr Casket Company, Inc. ("Warfield-Rohr Casket Company, Inc."), by its undersigned counsel, hereby responds, pursuant to Rule 33 of the Federal Rules of Civil Procedure to the First Set of Interrogatories served on Warfield-Rohr Casket Company, Inc. by Plaintiff Equal Employment Opportunity Commission ("EEOC") and states as follows:

### General Objections

1.     Warfield-Rohr Casket Company, Inc. objects to the instructions and definitions contained in the Interrogatories to the extent they purport to impose upon Warfield-Rohr Casket Company, Inc. any obligation greater than, or inconsistent with, that required by the Federal Rules.

2.     Warfield-Rohr Casket Company, Inc. objects to the instructions and the interrogatories to the extent that they are overly broad, unduly burdensome and oppressive.

MD_DOCS_A #1159502 v1

3.    Warfield-Rohr Casket Company, Inc. objects to the instructions and the interrogatories to the extent that they seek, or a Answer would disclose, material that is subject to the attorney-client privilege or the attorney work-product doctrine as provided by the Federal Rules and/or applicable law.

4.    Warfield-Rohr Casket Company, Inc. objects to the instructions and the interrogatories to the extent they seek irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

5.    Warfield-Rohr Casket Company, Inc. reserves the right to modify, revise, supplement and/or update any Answer supplied herein up to the date of trial.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Describe every reason for Defendant's decision to terminate Frederick Kuehnl indicating every fact in support thereof.

### ANSWER TO INTERROGATORY NO. 1:

Beginning in 1998, Defendant's business began to decline. In addition, it became apparent that the operation of the casket trimming room required only two (rather than three) people. Mr. Kuehnl was advised on numerous occasions that the trimming room had become a two person operation. One of the instances when Mr. Kuehnl was told that the trimming room was a two person operation was after Michael Eisenhart left the company. Mr. Eisenhart left the company because of the way he was treated by Mr. Kuehnl. Despite the fact that Mr. Kuehnl was responsible for Mr. Eisenhart's departure, and despite Defendant's repeated statements that the trimming room had become a two person operation, Mr. Kuehnl demanded that Defendant hire a third person for the trimming room. Defendant reluctantly agreed to hire a third person for the trimming room. Mr. Kuehnl rejected all of the prospective applicants suggested by

Defendant. Ultimately, Mr. Kuehnl located a prospective employee, Matthew Moore, who Defendant agreed to hire.

After Mr. Moore was hired, Defendant's sales continued to decline and it continued to be obvious that the trimming room required only two, rather than three, people. In addition, subsequent to the hiring of Mr. Moore, Mr. Kuehnl began performing less and less work and created serious morale problems within the trimming room. In fact, Mr. Moore and Elizabeth Skenderovic both threatened to quit as a result of Mr. Kuehnl's behavior.

As a result of Defendant's continued decline in business, Mr. Kuehnl's refusal to work in the trimming room with only one other employee, and his improper behavior which had caused the two trimming room employees who were performing the necessary work to threaten to quit (as well as the departure of Mr. Eisenhart), Defendant terminated Mr. Kuehnl.

**INTERROGATORY NO. 2:**

Set forth with particularity the factual basis for Defendant's contention that Frederick Kuehnl was terminated from his employment to save costs or as a cost cutting measure.

**ANSWER TO INTERROGATORY NO. 2:**

See Answer to Interrogatory No. 1. See also documents produced in response to Defendant's Answers to Plaintiff's Interrogatories.

**INTERROGATORY NO. 3:**

Identify, as specified in definition (I) above, all persons employed by Defendant in the Trimming Room for the period January 1, 1994 to the present.

**ANSWER TO INTERROGATORY NO. 3:**

In addition to Mr. Kuehnl, the following people were employed in the trimming room from January 1, 1994 through the present: Orva Kencel, 528 North Kenwood, Baltimore, MD 21205; Michael Eisenhart, 2046 Whistler Avenue, Baltimore, MD 21230; and Elizabeth Skenderovic and Matthew Moore, both of whom are current employees.

**INTERROGATORY NO. 4:**

Identify, as specified in definition (I) above, all persons who participated in the decision to terminate Frederick Kuehnl indicating the role and responsibility of each person in making this decision.

**ANSWER TO INTERROGATORY NO. 4:**

Howard Ayres made the decision to fire Mr. Kuehnl after consultation with

Michael Osmeyer and John Rosenberger.

**INTERROGATORY NO. 5:**

Identify, as specified in definition (I) above, every person who had supervisory responsibility over Frederick Kuehnl while he was employed by Defendant.

**ANSWER TO INTERROGATORY NO. 5:**

Howard Ayres had supervisory responsibility over Mr. Kuehnl.  In addition,

Michael Osmeyer nominally was also Mr. Kuehnl's supervisor.  In reality, however, Mr. Kuehnl

reported directly to Mr. Ayres.

**INTERROGATORY NO. 6:**

Identify, as specified in definition (I) above, every person known to the Defendant who may have information or knowledge which is relevant to the subject matter of this lawsuit or which may lead to the discovery of information relative to subject matter of this lawsuit, and describe the information or knowledge each person is believed to have.

**ANSWER TO INTERROGATORY NO. 6:**

The following current or former employees of Defendant are familiar with the

conduct and behavior of Mr. Kuehnl:  Howard Ayres, Michael Osmeyer, John Rosenberger,

Elizabeth Skenderovic, Matthew Moore, Charles Herb, Orva Kencel and Michael Eisenhart.  In

addition, Mr. Ayres, Mr. Osmeyer and Mr. Rosenberger are familiar with the financial condition

of Defendant and the specific reasons for, and circumstances under which, Mr. Kuehnl was

terminated.

**INTERROGATORY NO. 7:**

Describe all job duties and responsibilities of Frederick Kuehnl while employed by Defendant, including each project to which he was assigned, the duties he performed for the project and the dates during which time he was assigned to and performed work on each project.

**ANSWER TO INTERROGATORY NO. 7:**

Defendant objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome and seeks irrelevant information.  Without waiving its objection, Defendant states generally that Mr. Kuehnl was hired as a casket trimmer.  In or about the early 1980's. Mr. Kuehnl became a foreman of the trimming room.  His duties included ordering supplies, performing upholstery and trimming work on caskets.  In addition, Mr. Kuehnl performed special projects such as repairing caskets.

**INTERROGATORY NO. 8:**

Identify every person who will or may be called by the Defendant as an expert witness in this action and describe with specificity the area or areas of expected testimony in this litigation, the documents to be relied upon, if any, the substance of his or her expected testimony, and identify each and every civil action which the expert witness has testified by proper title/caption of the civil action, civil action number, the court in which the action was filed, the date the civil action was filed.

**ANSWER TO INTERROGATORY NO. 8:**

No experts have been identified at this time.

**INTERROGATORY NO. 9:**

Identify, as specified in definition (I) above, every person who replaced Frederick Kuehnl or assumed his job duties and responsibilities, or any portion thereof, subsequent to Frederick Kuehnl's employment with Defendant and describe what duties were performed by each individual.

**ANSWER TO INTERROGATORY NO. 9:**

No one was hired to replace Mr. Kuehnl after his termination.  The small amount of work which Mr. Kuehnl performed prior to his termination is currently performed by Mr. Moore and Ms. Skenderovic.

## INTERROGATORY NO. 10:

Identify, as specified in definition (I) above, every person who participated in the decision to hire Frederick Kuehnl indicating the role and responsibility of each person in making this decision.

## ANSWER TO INTERROGATORY NO. 10:

Howard Ayres made the decision to hire Mr. Kuehnl. At the time, Mr. Ayres was the Vice President in Charge of Operations for Defendant.

## INTERROGATORY NO. 11:

Describe the organizational structure of Defendant for the period January 1, 1994 to the present, including but not limited to the classifications of its employees.

## ANSWER TO INTERROGATORY NO. 11:

Defendant objects to Interrogatory No. 11 on the grounds that it is not clear on the information Plaintiff is seeking. Without waiving its objection, Defendant states that Defendant is a Corporation. Defendant does not understand what Plaintiff means by the phrase "classifications of its employees."

## INTERROGATORY NO. 12:

Identify, as specified in the definition (I) above, every person who was terminated from their employment with Defendant in order to save costs or as a cost cutting measure, at any time during the period January 1, 1997 to the present, and specify the nature of the savings and how much cost was saved.

## ANSWER TO INTERROGATORY NO. 12:

In addition to Mr. Kuehnl, August Graumlich was terminated on June 30, 2000. Defendant saved the expense of salary and benefits for Mr. Kuehnl and Mr. Graumlich after they were terminated.

## INTERROGATORY NO. 13:

Identify, as specified in definition (I) above, all persons who were hired by Defendant during the period January 1, 1994 to the present.

**ANSWER TO INTERROGATORY NO. 13:**

Defendant objects to Interrogatory No. 13 on the grounds that it is irrelevant.

**INTERROGATORY NO. 14:**

Identify, as specified in definition (I) above, every individual who was either contacted for or supplied information upon which the answers to these interrogatories are based, designating the specific interrogatory to which each person identified contributed.

**ANSWER TO INTERROGATORY NO. 14:**

Defendant objects to Interrogatory No. 14 on the grounds that it seeks information protected by the attorney-client privilege and the work product doctrine. Without waiving its objections, Defendant states that Howard Ayres and Michael Osmeyer participated in the drafting of these Answers to Interrogatories.

**INTERROGATORY NO. 15:**

Identify, as specified in definition (I) above, all persons who were hired by Defendant, at any time during the period January 1, 1997 to the present, to work for or perform services for Defendant.

**ANSWER TO INTERROGATORY NO. 15:**

Defendant objects to Interrogatory No. 15 on the grounds that it is duplicative and seeks irrelevant information.

**INTERROGATORY NO. 16:**

Specify the salaries or wages earned by those individuals identified in defendant's answer to Interrogatory No. 15 and the hours worked, indicating the starting salary or wage rate, each raise given to such person to the present, and the date of each raise given.

**ANSWER TO INTERROGATORY NO. 16:**

Defendant objects on the grounds that the information sought is overly broad, unduly burdensome and irrelevant.

**INTERROGATORY NO. 17:**

Specify the salaries or wages earned by those individuals identified in Defendant's answer to Interrogatory No. 3 and the hours worked, indicating the starting salary or wage rate, each raise given to such person to the present, and the date of each raise given.

**ANSWER TO INTERROGATORY NO. 17:**

Defendant objects to Interrogatory No. 17 on the grounds that it is unduly

burdensome and seeks irrelevant information. Without waiving its objection, Defendant states

that Mr. Kuehnl worked forty hours per week prior to his termination and that Mr. Moore and

Ms. Skenderovic work forty-one and one quarter hours per week. Their salary history from 1995

through 2000 will be produced with Defendant's Responses to Plaintiff's Document Requests.

**INTERROGATORY NO. 18:**

Specify the salaries or wages earned by those individuals identified in Defendant's answer to Interrogatory No. 9 and the hours worked, indicating the starting salary or wage rate, each raise given to such person to the present, and the date of each raise given.

**ANSWER TO INTERROGATORY NO. 18:**

No one was hired to replace Mr. Kuehnl.

Respectfully submitted,

Charles S. Hirsch
Ballard Spahr Andrews & Ingersoll, LLP
300 East Lombard Street, 19th Floor
Baltimore, MD 21201
(410) 528-5503
Attorney for Defendant

## VERIFICATION

I, Howard Ayres, am Chairman of Warfield-Rohr Casket Company, Inc. I am duly authorized by the corporation to execute these Answers to Interrogatories under oath and on its behalf. The information set forth in these answers may have been collected by others and such information is not necessarily within my personal knowledge. However, on behalf of the corporation, I solemnly affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true to the best of my knowledge, information and belief.

Dated: 1/16/02

W. Howard Ayres
_____
Howard Ayres

MD_DOCS_A #1159502 v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2002 a copy of the foregoing Warfield-Rohr Casket Company, Inc.'s Answer to EEOC's First Set of Interrogatories was sent via first class mail, postage prepaid to:

Gerald S. Kiel, Esquire
Stephen P. O'Rourke, Esquire
and
Regina M. Andrew, Esquire
Equal Employment Opportunity Commission
Baltimore District Office
10 South Howard Street
Third Floor
Baltimore, Maryland 21201

Charles S. Hirsch