**EXHIBIT 5**

ATTORNEYS AT LAW
## TYDINGS & ROSENBERG LLP

100 EAST PRATT STREET
BALTIMORE, MARYLAND 21202
410 752 9700
FAX 410 727 5460

WASHINGTON OFFICE
202 296 1600
FAX 202 296 8411

**MARYANN S. COHEA**
410/752-9744
mcohea@tydingslaw.com

October 13, 2000

Mr. W. Howard Ayres
President and Plan Administrator
Warfield Rohr Casket Co., Inc.
901 W. Patapsco Avenue
Baltimore, Maryland 21230

Retirement Plan Committee of the
Warfield Rohr Casket Co., Inc.
901 W. Patapsco Avenue
Baltimore, Maryland 21230

**Re: Frederick Kuehnl's Pension Plan**

Dear Sirs:

This firm has been engaged by your former employee, Frederick Kuehnl, in connection with various issues arising from his termination from employment with the Warfield Rohr Casket Co., Inc. ("Warfield Rohr").

As you are aware, Mr. Kuehnl was terminated without warning by Warfield Rohr on April 28, 2000. At the time of his termination, Mr. Kuehnl was 56 years old. Mr. Kuehnl's job duties in the company Sewing Room were assumed by an employee approximately 20 years younger than Mr. Kuehnl.

Mr. Kuehnl's performance as foreman of the company's Sewing Room, and his loyalty to the company for 20 years, was exemplary. However, prior to his termination, W. Howard Ayres, Warfield-Rohr's President, pointedly asked Mr. Kuehnl how old he was and when he planned to retire. When Mr. Kuehnl responded that he planned to remain working at Warfield Rohr until he was at least 65 years old, Mr. Ayres replied that the company would "have to do something" about that.

#225069

Kuehnl Deposition
Exh. No. 11   Date 5-16-02
Lolita G. Morris   Salomon Reporting

## TYDINGS & ROSENBERG LLP

W. Howard Ayres
Retirement Plan Committee
October 13, 2000
Page 2

Shortly after this conversation, Mr. Ayres terminated Mr. Kuehnl's employment, telling him to "get out." The company conducted Mr. Kuehnl's termination in an inappropriate and heavy-handed manner, demanding that Mr. Kuehnl turn in the keys to the company premises that he had held for many years and implying that he could not be trusted to remove his personal belongings from the company premises without supervision.

The circumstances surrounding Mr. Kuehnl's termination strongly suggest that Warfield Rohr intentionally discriminated against Mr. Kuehnl based on his age. In addition, Warfield Rohr owes Mr. Kuehnl for two weeks of accrued unused vacation pay at his regular weekly rate. Under the company's regular vacation policy, Mr. Kuehnl was entitled to three weeks vacation per calendar year. Mr. Kuehnl took no vacation during calendar year 2000. Upon termination, Mr. Ayres confirmed to Mr. Kuehnl that he would be receive three weeks accrued unused vacation pay. However, Warfield Rohr has paid Mr. Kuehnl only one of his three weeks of accrued unused vacation pay.

Under the Maryland Wage Payment Law, Md. Code Ann., Labor & Empl. §3-501 et seq., employers are required to pay all wages due upon termination of employment no later than the next regularly scheduled payday following termination. As a fringe benefit, accrued unused vacation pay constitutes "wages" within the meaning of the Maryland Wage Payment Law. The Maryland Wage Payment Law provides for recovery in an amount three times the wages owed, plus attorney's fees.

Mr. Kuehnl currently is considering his legal options with respect to his termination of employment and the company's failure to pay him his accrued unused vacation pay, including but not limited to filing a complaint against Warfield Rohr for violation of the Age Discrimination in Employment Act (ADEA) and a claim under the Maryland Wage Payment Law. Mr. Kuehnl has authorized me to make a demand on his behalf for immediate payment in full of the two weeks accrued unused vacation pay due to him. In addition, Mr. Kuehnl is prepared to take any legal steps necessary to enforce his other post-termination rights against Warfield Rohr. However, given his years of loyal service to the company, he remains hopeful that he will be able to reach an amicable resolution of his claims against the company.

Accordingly, Mr. Kuehnl has authorized me to discuss with Warfield Rohr an amicable of his claims against the company. Please contact me, or have your attorney contact me, within two weeks of the date of this letter to discuss resolution of these issues.

Finally, Mr. Kuehnl has provided me with certain documents relating to the Warfield Rohr pension plan. In order that I may properly advise Mr. Kuehnl of his legal rights under the pension plan, Mr. Kuehnl has authorized me to request, on his behalf, copies of any and all documents under which the pension plan has been established or is operating, including but not

## TYDINGS & ROSENBERG LLP

W. Howard Ayres
Retirement Plan Committee
October 13, 2000
Page 3

limited to the most recent pension plan document, summary plan description, plan description, and any trust agreement, collective bargaining agreement or other contract or instrument under which the plan is established or operated. In addition, please provide me, on Mr. Kuehnl's behalf, with a copy of the plan's most recent annual report and summary annual report and a recent statement of benefits for Mr. Kuehnl under the pension plan. As you are aware, under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1024(b)(4) and §1132 (c), copies of these documents must be provided to Mr. Kuehnl within 30 days. Please send the documents to me at the above address. If there is a charge for copying any of these documents, please advise me immediately.

Very truly yours,

Maryann S. Cohea

MSC/at

cc: Mr. Frederick Kuehnl