IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. WMN-01-2872 |
| WARFIELD-ROHR CASKET COMPANY, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S RESPONSE AND OBJECTIONS TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant, Warfield-Rohr Casket Company, Inc. ("Warfield-Rohr"), by its attorneys, hereby responds and objects to the Proposed Findings of Fact and Conclusions of Law filed by Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), and states as follows.

**I.     The EEOC's Requests for Equitable Relief Should Not Be Considered Until Warfield-Rohr's Motion Under Federal Rules 50 And 59 Has Been Decided.**

As Warfield-Rohr stated at the conclusion of the trial in this case, it intends to file with the Court a Motion for Judgment as a Matter of Law and/or for a New Trial (the "Motion") pursuant to Federal Rules of Civil Procedure 50 and 59. Warfield-Rohr's Motion will be filed no later than March 14, 2005. The determination of Warfield-Rohr's Motion may render moot the EEOC's requests for equitable relief. Accordingly, this Court should reserve ruling on the EEOC's requests until it has reached a determination on Warfield-Rohr's Motion.

When both legal and equitable remedies are sought, the determination of any equitable remedy should not be made until all issues of liability and legal damages are resolved. Duke v. Uniroyal Inc., 928 F.2d 1413, 1422 (4th Cir. 1991); Ogden v. Wax Works, Inc., 29 F.

Supp. 2d 1003, 1006 (N.D. Iowa 1998) (recognizing that the trial court determined liability and back pay damages before holding a post-verdict evidentiary hearing on the plaintiff's request for front pay). The resolution of Warfield-Rohr's Motion will affect and/or render moot the EEOC's requests for front pay and for the posting of a notice. Accordingly, the Court should fully determine liability and back pay damages by resolving Warfield-Rohr's Motion prior to ruling on the EEOC's requests for equitable relief.

## II. Front Pay Is Not An Appropriate Remedy.

Even if the Court determines that it should consider the EEOC's requests for equitable relief prior to the determination of Warfield-Rohr's Motion, it should deny the EEOC's request for front pay because front pay is not an appropriate remedy in this case. The ADEA permits a range of equitable remedies, including reinstatement and front pay. Duke, 928 F.2d at 1422. The goal of the remedies under the ADEA is to make the plaintiff whole. Id. at 1423. Determining whether equitable remedies are appropriate to compensate future losses requires an analysis of all of the circumstances existing at the time of the trial. Id. In determining whether front pay is appropriate, courts have considered "the plaintiff's prospects of obtaining comparable employment; the time period of the award; whether the plaintiff intended to work; and whether liquidated damages have been awarded." Ford v. Rigidply Rafters, Inc., 984 F. Supp. 386, 392 (D. Md. 1997).

The EEOC states that reinstatement is improper in this case due to animosity created by the litigation and a resultant deterioration in the working relationship between Mr. Kuehnl and Warfield-Rohr. Accordingly, the EEOC concludes that Mr. Kuehnl should receive front pay until his contemplated retirement at the age of sixty-five, which is approximately 3½ years from the date of the jury verdict in this case and over 8 years from the date on which he was terminated. In fact, the EEOC has no choice but to argue that reinstatement is improper and

2

that front pay is appropriate because Mr. Kuehnl sold his house in Baltimore and voluntarily relocated to his retirement home in Delaware, which he began building prior to his termination from Warfield-Rohr.  Mr. Kuehnl's decision to relocate to his retirement home means that he couldn't work at Warfield-Rohr even if reinstatement was ordered.  If Warfield-Rohr's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial is denied and the jury's verdict stands, then Mr. Kuehnl should not receive front pay damages because the verdict already compensates him fully.  Mr. Kuehnl is not entitled to front pay because it would result in an unfair windfall, because he has failed to mitigate damages, because he voluntarily left the workforce, and because the front pay damages sought are unduly speculative.

### A.    An Award of Front Pay Would Result in a Windfall for Mr. Kuehnl.

When reinstatement is unavailable, the Court may consider an award of front pay in its discretion.  Ford, 984 F. Supp. at 391; Duke, 928 F.2d at 1424.  However, "because front pay can result in an unfair windfall for the Plaintiff, *it must be granted sparingly*.  Ford, 984 F.Supp. at 392 (emphasis added).  Damages under the ADEA are designed to make a former employee whole, not to subsidize his personal lifestyle choices.  Miller v. AT&T, 83 F. Supp. 2d 700, 708-09 (S.D. W.Va. 2000).  Accordingly, the award of front pay rests squarely within the District Court's discretion, which must be "tempered" by "the potential for a windfall" to the Plaintiff.  Duke, 928 F. 2d at 1424.  "Front pay remains a special remedy, warranted only by egregious circumstances."  Lewis v. Federal Prison Industries, Inc., 953 F.2d 1277, 1281 (11th Cir. 1992).

In this case, any award of front pay to Mr. Kuehnl would constitute a windfall.  Mr. Kuehnl has already received a judgment in excess of $397,000.00.  This amount includes

liquidated damages of approximately $200,000.00.[1]  The jury's award of nearly $200,000.00 in liquidated damages is equivalent to nearly four years at Mr. Kuehnl's normal salary, so Mr. Kuehnl has already been made whole for a future period greater than the three and a half years of front pay which he seeks.  Whether liquidated damages have already been awarded to a claimant is an appropriate factor to consider in the District Court's determination of the appropriateness of front pay.  Ford, 984 F.Supp. at 392 (citing Downes v. Volkswagen of America, Inc., 41 F.3d 1132, 1141 (7th Cir. 1994)); Xiao-Yue Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 759 (D.Md. 2001) ("[A] substantial amount of liquidated damages may be a consideration in determining whether the plaintiff has been made whole.").  Mr. Kuehnl has not worked regularly since the year 2000.  The jury's award of nearly $400,000.00 – substantially equivalent to eight years of employment at Mr. Kuehnl's salary – is already a windfall.  Any award of front pay would merely constitute an additional financial windfall.  Accordingly, the EEOC's request for front pay should be denied.

Moreover, Mr. Kuehnl elected in 2003 to move to his retirement home in Delaware and pursue his longtime upholstery hobby as a business.  Mr. Kuehnl admitted at trial that his plans for his retirement home included a workshop where he could continue to perform this hobby.  Accordingly, Mr. Kuehnl is merely engaging in those activities which he anticipated doing in his retirement.  Front pay is not intended to require an employer to subsidize a former employee's lifestyle choices.  Miller, 83 F. Supp. 2d at 708-09.

> [A plaintiff] is certainly entitled to a change of career.  However, her new career and lifestyle choice should not be subsidized by

---

[1]   The jury's verdict sheet specifically states that the award of damages includes liquidated damages.  The EEOC's suggestion in paragraph 2 of its Proposed Findings of Fact and Conclusions of Law, that Mr. Kuehnl is entitled to further liquidated damages, is incorrect.

4

> [her former employer]. A successful … plaintiff cannot simply reevaluate her career goals, accept a lesser paying job, and receive the same amount of compensation as before through front pay. The possibilities for abuse are patent and the Court finds that front pay is not appropriate in such circumstances.

Id. Mr. Kuehnl should not be allowed to effectively retire and have that retirement supplemented by front pay.

### B. Mr. Kuehnl is Also Not Entitled to Front Pay Because He Has Failed to Mitigate His Damages.

"The purpose of front pay under the ADEA is to insure that a person who has been discriminated against on the basis of his age is made whole, not to guaranty every claimant who cannot mitigate an annuity for the remainder of their working life." Gries v. Zimmer, Inc., 795 F. Supp. 1379, 1385 (W.D. N.C. 1992). Whether the Plaintiff intended to work and whether the Plaintiff properly mitigated his damages are appropriate factors to be considered by the District Court in deciding whether to award front pay. Ford, 984 F.Supp. at 392. Plaintiff has had ample opportunity since his termination nearly five years ago to locate a job comparable to his position at Warfield-Rohr or to develop his business. Plaintiff admitted at trial that he only looked for work during two discrete periods of time – because he was required to do so in order to collect unemployment. During these periods, he searched for only two jobs per week, the minimum required by the unemployment office. Mr. Kuehnl never answered advertisements in the newspaper, and only looked at job listings in the newspaper a few times. Mr. Kuehnl simply visited places near his homes in Baltimore and Delaware in order to fulfill the requirements of unemployment – not to actually find a job. Mr. Kuehnl's real focus was to convert his hobby into a business.

Although Mr. Kuehnl testified that he intended to convert his hobby into a business right after he was terminated by Warfield-Rohr, he did not consider his business to be

"started" until 2004, after he had moved from Baltimore to his retirement home in Delaware in 2003.[2] Since that time, Mr. Kuehnl has merely engaged in his hobby as an upholsterer. Notwithstanding the fact that it took Mr. Kuehnl four years to start his business, it is unreasonable for Mr. Kuehnl to expect that his decision to merely expand his hobby, which he planned to do even before he was retired, constitutes proper mitigation. Accordingly, the EEOC's request for front pay should be denied due to Mr. Kuehnl's failure to mitigate.[3] Gries, 795 F.Supp. at 1387 (holding that Plaintiffs in an ADEA case were not entitled to front pay because they were unwilling to change their behavior to maintain employment after their unlawful terminations); Ford, 984 F.Supp. at 393 (holding that plaintiffs should have been able to find comparable employment within two years after their termination).

        **C.**    **Mr. Kuehnl is Not Entitled to Front Pay Because He Voluntarily Left the Workforce.**

Mr. Kuehnl's decision to move from the Baltimore area to his retirement home in Delaware and to stop looking for jobs in the workforce, in favor of the continuation of his hobby, indicates that he has voluntarily withdrawn from the workforce and that he is not entitled to front pay. Caudle v. Bristow Optical Company, Inc., 224 F.3d 1014 (9th Cir. 2000). In Caudle, the

---

[2]   Mr. Kuehnl testified that he spent very little time working on starting his "business" in 2000 and 2001 because he needed to fix up his sister-in-law's house, sell it, and move her. Mr. Kuehnl spent a little more time working in his business in 2002. Mr. Kuehnl spent very little time working in his business in 2003 because he had to fix up and sell his Baltimore house and prepare and move to his Delaware home. By Mr. Kuehnl's own admission, it was not until 2004 when he really started his "business." These activities are personal decisions which cannot constitute justifications for his failure to use reasonable diligence in obtaining new employment. Meyer v. United Airlines, Inc., 950 F. Supp. 874, 877 (N.D. Ill. 1997) (citing Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir. 1985)).

[3]   Mr. Kuehnl's failure to mitigate in a reasonable manner will be addressed in greater depth in Warfield-Rohr's Motion for Judgment as a Matter of Law and/or for a New Trial.

Plaintiff's decision to stay at home with her child constituted a withdrawal from the workforce, eliminating the possibility of front pay. Id. Mr. Kuehnl voluntarily relocated to his retirement home in Delaware, leaving the metropolitan Baltimore job market in favor of the seclusion of the Eastern Shore. Mr. Kuehnl admittedly moved to Delaware at his own choice, rather than in an attempt to find employment.

Furthermore, Mr. Kuehnl admits that he looked for jobs only during two brief periods, and has not attempted to find work since at least March 2002. Mr. Kuehnl's "business" is merely an extension of the hobby in which he has been engaged for at least the past ten years. Mr. Kuehnl could not reasonably expect that his business would ever make him a salary reasonably comparable to that which he made at Warfield-Rohr.[4] In short, Mr. Kuehnl chose to move to his retirement home and disengage himself from the active work force. Instead, he has merely been practicing his hobby, which he intended to pursue all along after his retirement. Mr. Kuehnl has made the personal decision to leave the workforce; accordingly, he is not entitled to receive front pay. Id.

### D. The Front Pay Damages Claimed by the EEOC are Unduly Speculative.

It is axiomatic that awards of front pay, like all damage awards, may not be given if they are "unduly speculative." Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995). The Plaintiff bears the initial burden of proof in establishing a claim for front pay:

> The Plaintiff bears the initial burden of providing the District Court "with the essential data necessary to calculate a reasonably certain front pay award," including "the amount of the proposed award, the length of time the Plaintiff expects to work for the Defendant

---

[4] According to Mr. Kuehnl, he made no profit in his business in 2003. Mr. Kuehnl had gross receipts of approximately $10,000.00 in 2004, but he has not yet deducted the expenses of materials and other costs, so his profit will fall substantially short of $10,000.00.

>and the applicable discount rate." McKnight v. General Motors
>Corp., 973 F.2d 1366, 1372 (7th Cir. 1992), cert. denied, 507 U.S.
>915, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); See Fleming v.
>County of Kane, 898 F.2d 553, 560 (7th Cir. 1990).

Barbour, 48 F.3d at 1279.  Accordingly, if a Plaintiff fails to supply the District Court with the information necessary to "calculate a reasonably certain award," the Court may reject the request for front pay.  McKnight, 973 F.2d at 1372.

The EEOC has failed to present evidence of front pay damages which is sufficiently definitive to calculate a reasonably certain award.  In fact, during her closing argument, the EEOC's attorney admitted that the EEOC's calculation of damages was wrong.[5]  Specifically, the EEOC's damages expert, Dr. Sovan Tun, admitted in his testimony that his calculation of front pay began with the improper base salary as of the year 2000.  Dr. Tun also admitted that he assumed that Mr. Kuehnl would receive a 3% salary increase yearly until his retirement.  That assumption was not supported by any testimony, and was directly refuted by the fact that Mr. Kuehnl did not receive a salary increase in 2000.  Dr. Tun admitted that these errors were compounded throughout his calculations, resulting in entirely incorrect front pay salary projections.

Furthermore, an award of front pay would be unduly speculative because Mr. Kuehnl likely would not have been employed until his retirement, notwithstanding discrimination.  "A front pay award may be inappropriate when, because of a company's deteriorating financial condition and ongoing work force reductions, there is little likelihood that the plaintiff's employment would have continued into the future."  Xiao-Yue Gu, 127 F.Supp.2d

---

[5]  The EEOC's suggestion during its closing argument that the jury should simply "tweak" the findings of the EEOC's damages expert and simply "do its best" was an invitation to the jury to reach a verdict which is not reasonably certain.

8

at 761-62 (quoting <u>Downes</u>, 41 F.3d at 1142).  It is undisputed that Warfield-Rohr's trimming room has closed and that there is no more trimming business in the company.  Therefore, it is speculative to assume that Mr. Kuehnl would have remained employed at all, let alone that he would have remained employed at his prior salary.

As a result of the admissions of Dr. Tun and the EEOC's attorney that the EEOC's calculation of front pay is entirely inaccurate, the EEOC has failed to meet its burden of providing the District Court "with the essential data necessary to calculate a reasonably certain front pay award."  Accordingly, its claim for front pay must be denied.

### III.     Warfield Rohr Should Not Be Required to Post a Notice to Employees.

The EEOC also requests that the Court order Warfield-Rohr to post a Notice to Employees throughout Warfield-Rohr's facility, where notices to employees customarily are posted.  EEOC's Proposed Findings of Fact and Conclusions of Law, ¶ 7.  A copy of the EEOC's proposed notice is attached to the EEOC's Proposed Findings of Fact and Conclusions of Law as Attachment A.[6]

Warfield-Rohr should not be required to post a notice to employees on its premises.  It is undisputed that the decision to terminate Mr. Kuehnl was made solely by Howard Ayres.  No other employee of Warfield-Rohr was involved in the decision to terminate Mr. Kuehnl.  Mr. Ayres is deceased and there are no allegations that Warfield-Rohr has any institutional bias of any kind.  In fact, the evidence at trial demonstrated conclusively that Warfield-Rohr does <u>not</u> discriminate against its employees on the basis of age; the undisputed

---

[6]     The notice to employees attached to the EEOC's Proposed Findings Of Fact And Conclusions Of Law as Exhibit A contains incorrect information.  The notice improperly identifies Marcia Ayres as the President of Warfield-Rohr Casket Company.  In fact, John Rosenberger is the President of Warfield-Rohr Casket Company.

evidence showed that numerous employees have retired from Warfield-Rohr over the past two decades, and one-third of the current work force is older than Mr. Kuehnl was at the time of his termination. There is no reason to post a notice to employees, and the EEOC's request should be denied.

## CONCLUSION

For the reasons stated herein, the EEOC's requests for front pay and for the posting of a notice should be denied.

Respectfully submitted,

/s/ Charles S. Hirsch
Charles S. Hirsch
Glenn A. Cline
Ballard Spahr Andrews & Ingersoll, LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202
(410) 528-5600

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March 2005, the attached Defendant's Response and Objections to Plaintiff's Findings of Fact and Conclusions of Law was served electronically on:

Regina M. Andrew, Esquire
Equal Employment Opportunity Commission
Baltimore District Office
10 S. Howard, 3rd Floor
Baltimore, Maryland 21201

/s/ Charles S. Hirsch
Charles S. Hirsch