Westlaw.

92 F.3d 1177 (Table)  
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))  
**Unpublished Disposition**  
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 1

C  
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,  
Fourth Circuit.  
Don E. DENIO, Plaintiff-Appellant,  
v.  
ASPLUNDH TREE EXPERT COMPANY, a Pennsylvania corporation, Defendant-Appellee.  
No. 95-1904.

Argued April 4, 1996.  
Decided July 30, 1996.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. James C. Turk, District Judge. (CA-94-41-L)

W.D.Va.

AFFIRMED.

ARGUED: John Ernest Falcone, SMITH & FALCONE, Lynchburg, Virginia, for Appellant. Temple Witt Cabell, SCHAFFER & CABELL, P.C., Richmond, Virginia, for Appellee. ON BRIEF: Heidi E. Henderson, SCHAFFER & CABELL, P.C., Richmond, Virginia, for Appellee.

Before MOTZ, Circuit Judge, TRAXLER, United States District Judge for the District of South Carolina, sitting by designation, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

OPINION

PER CURIAM:

**1 Don E. DeNio brought this age discrimination action against his former employer, Asplundh Tree Expert Company, alleging that he was unlawfully terminated in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1994). The jury returned a verdict in favor of DeNio, awarding him $30,800 in damages. Asplundh moved for judgment as a matter of law. The district court granted the motion and DeNio appealed. We affirm.

I.

DeNio, age 53, had been employed with Asplundh Tree Expert Company for twenty-seven years when he was discharged from his position as a supervisor in the "parts call-in" department. DeNio began his career as a shop mechanic, and later worked as a forklift operator, a stockroom clerk, an inspector and an aerial lift foreman, until he was ultimately promoted to supervisor of the parts call-in department.

The parts call-in department consisted of two employees in addition to DeNio: Reginald Williams, age 29, and Anthony Taylor, age 30. It is uncontroverted that the duties of the three employees, except for DeNio's supervisory responsibilities, were identical. Each answered telephone calls from around the world concerning problems with Asplundh equipment and helped the callers to resolve those problems. However, DeNio had far more experience with Asplundh than Williams and Taylor and received a much more generous salary and benefits. All three employees in the parts call-in department, including DeNio, were in turn supervised by Richard Gilbert, age 37, whose title was Call-In Supervisor and Rental Fleet Supervisor. Gilbert was supervised by Carl Paugh, age 54, who was the general manager of the plant.

In August 1993, Paugh and Gilbert began to consider the problem of over-staffing in the parts call-in department. They agreed that one position

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 2

in the department had to be eliminated; they selected DeNio for discharge. Asplundh conceded that performance and skill were not at issue in the decision to discharge DeNio. In addition, at oral argument in this case, the company specifically disavowed cost and DeNio's higher salary as a motivating factor in its decision. The company asserts instead that DeNio's dismissal was based on its decision to eliminate a supervisor position.

To prove that the company's stated reason for firing him was pretextual, DeNio offered evidence that all three employees in the parts call-in department performed similar duties and that his supervisory role was minimal. Moreover, DeNio testified that when notified of his discharge, he pleaded with his supervisors, on at least two occasions, to place him in a lower-paying non-supervisory position rather than discharge him. Although Asplundh refused to consider DeNio for these positions, the company hired nineteen new employees at the time of his discharge or shortly thereafter. DeNio maintained that he was qualified to perform several of the nineteen available jobs.

Asplundh conceded that it hired nineteen new employees at the same time it discharged DeNio. The company did not claim that DeNio was unqualified for all nineteen positions. However, company witnesses did testify that they offered DeNio an hourly position as a second shift stockroom clerk and that DeNio never accepted the position.

**2 As further indication that Asplundh's proffered reason for his termination was pretextual, DeNio offered evidence that during the period in question, the company was very successful financially and was expanding worldwide. DeNio also presented evidence of allegedly discriminatory statements in the company's published magazine, *The Asplundh Tree*. In an article entitled "A Progress Report: Issues, Innovations and Improvements," the company stated that it was experiencing a "youth trend" among its managerial employees, with the average age of management falling from 52 years old in 1988 to 44 years old in 1993.

The trial before the district court lasted two days. At the conclusion of DeNio's case, Asplundh moved for judgment as a matter of law.

The court, noting that DeNio's case was "weak," nonetheless denied the motion. At the end of its own case, Asplundh renewed its motion; the court again denied it and submitted the case to the jury. The jury awarded DeNio $30,800 in damages. Asplundh moved again for judgment as a matter of law, which the court then granted.

II.

In considering a motion for judgment as a matter of law, the reviewing court is to apply the same standard as the trial court. Thus "viewing the evidence in the light most favorable to the non-moving party and giving him the benefit of all reasonable inferences," a court must determine if "there is sufficient evidence in the record to support a jury verdict in his favor." *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir.1988) (citations omitted), *cert. denied*, 490 U.S. 1107 (1989). A court may not weigh the evidence anew, reassess the credibility of witnesses, or base its decision on materially contradicted evidence. *Al-Zubaidi v. Ijaz*, 917 F.2d 1347, 1348 (4th Cir.1990), *cert. denied*, 499 U.S. 960 (1991); *Herold*, 864 F.2d at 319. However, in ADEA cases, a court must verify that the jury's verdict was based on evidence demonstrating a "reasonable probability" and not merely a possibility of age discrimination. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 242 (4th Cir.1982).

A plaintiff can prove an ADEA violation in one of two ways. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir.1992). First, a plaintiff can offer direct and circumstantial evidence that he would not have been discharged but for his age; the evidence must be of sufficient probative force to support an inference of discrimination. *Goldberg v. B.Green & Co.*, 836 F.2d 845, 847 (4th Cir.1988); *Taylor v. Home Insurance Co.*, 777 F.2d 849, 854 (4th Cir.1985), *cert. denied*, 476 U.S. 1142 (1986).
Second, a plaintiff may use the *McDonnell Douglas* scheme of shifting burdens applied in Title VII cases. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this scheme, once the plaintiff has established a prima facie case of age discrimination, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-02872-WMN   Document 66-5   Filed 03/15/2005   Page 3 of 10   Page 4 of 11

92 F.3d 1177 (Table)                                                                                      Page 3
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

its employment decision. *See, e.g., St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1993); *Lovelace,* 681 F.2d at 239. If the employer meets this burden, the plaintiff must then show that the employer's proffered reason was mere pretext and that age was the more likely reason for his dismissal.

**3 In *Lovelace,* we explained the sequence of analysis in "ruling upon an evidence sufficiency motion at the conclusion of all the evidence in a jury trial of an ADEA case" as follows:
> The first question is whether plaintiff's evidence may have carried the original production burden without need to invoke the *McDonnell-Douglas* presumption.... If this is the judicial assessment, inquiry of course ceases, no further production burdens are put in play, and the motion can be denied. If, on the other hand, the plaintiff's evidence fails even to support the unadmitted predicates of the presumption so that it may not be invoked to carry this original burden, inquiry similarly ends and the motion can be granted.

*Lovelace,* 681 F.2d at 240. Accordingly, we now proceed to this analysis.

### III.

The first *Lovelace* question is whether DeNio carried the original production burden without the need to invoke the *McDonnell Douglas* presumption. *Lovelace,* 681 F.2d at 240. As the district court recognized, DeNio offered three kinds of evidence that he claimed met this burden.

#### A.

First, DeNio introduced evidence that Asplundh fired him because it wanted to eliminate the cost of his comparatively high salary and benefits. He further offered evidence that this higher salary was "primarily a function of age." On appeal, Asplundh repeatedly asserted that it did not discharge DeNio because he was a salaried employee who was paid approximately twice as much as his two younger colleagues in the parts call-in department. But there was evidence before the jury--including testimony from some company officials--that this was, indeed, the reason DeNio was discharged. Accordingly, the jury was entitled to so conclude.

However, notwithstanding DeNio's assertions (and perhaps the company's fears), this evidence does not prove age discrimination. The Supreme Court has expressly held that an employer does not violate the ADEA "by acting on the basis of a factor, such as an employee's pension status or seniority [or salary], that is empirically correlated with age." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 608-09 (1993). Even though age is often related to factors such as salary, it is "analytically distinct" from them. *Id.* at 611. For this reason, "an employer can take account of one while ignoring the other." *Id.* Moreover, "[w]hen the employer's decision is wholly motivated by factors other than age, ... [e]ven if the motivating factor is correlated with age," that decision is not contrary to the ADEA. *Id.* at 611. [FN1] Accordingly, even if DeNio was fired simply because Asplundh desired to reduce its salary costs, this was not evidence of age discrimination.

> FN1. DeNio's reliance on two pre-*Hazen Paper* cases, *Tuck v. Henkel Corp.,* 973 F.2d 371 (4th Cir.1992), *cert. denied,* 507 U.S. 918 (1993) and *Metz v. Transit Mix, Inc.,* 828 F.2d 1202 (7th Cir.1987) is misplaced. *Metz,* which is directly contrary to *Hazen Paper,* is, as the Seventh Circuit itself has recently recognized, no longer good law. *See Anderson v. Baxter Health Care Corp.,* 13 F.3d 1120, 1125-26 (7th Cir.1994). Similarly, to the extent that *Tuck* is contrary to *Hazen Paper,* it too is no longer good law.

#### B.

DeNio also testified that when he was discharged, he told his supervisors that he would take "any job" in the plant, including a much lower-paying hourly non-supervisory position. The company supervisors testified at trial that they did not remember this and that they did offer DeNio an hourly position, which he did not take. However, the jury was certainly entitled to credit DeNio's testimony on this point--particularly in light of the supervisors' conflicting deposition testimony. But again, contrary to DeNio's arguments, the jury was not entitled to infer from the company's refusal to consider him for an alternate position, that it had discharged him because of age. DeNio had no contractual or other right to employment with Asplundh. The company was entitled to fire him

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-02872-WMN   Document 66-5   Filed 03/15/2005   Page 4 of 10
Page 5 of 11

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 4

for a good reason, a poor reason, or no reason at all--as long as the company did not fire him for an illegal reason. If the company did not fire DeNio for an illegal reason, like age discrimination, then it was not required to re-employ him. Providing DeNio with an available lower-paying position certainly seems the least the company could have done for an employee who had given it twenty-seven years of unblemished service. Failure to do this may well constitute evidence of unkindness and poor management; it does not, however, constitute evidence of age discrimination.

C.

**\*\*4** The third piece of evidence that DeNio offered to support his claim of age discrimination, without need to invoke the *McDonnell-Douglas* presumption, was evidence that he contends demonstrates a "pattern and practice of age discrimination." This evidence consisted of: (1) the company's statement in its official publication that there had been a "youth trend" in the "management team;" (2) testimony of an "unwritten policy of requiring employees to retire at age 65;" and (3) the fact that the former plant manager had been replaced when he was fifty-one by a twenty-nine year old man.

This evidence demonstrates little. Statements that merely make observations of a generational change without suggesting that older employees ought to be replaced by more youthful ones are not sufficient to infer discrimination. *See Birbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 511-12 (4th Cir.) (employer's statement that "there comes a time when we have to make a way for younger people" created no inference of age bias), *cert. denied,* 513 U.S. 1058, 115 S.Ct. 666 (1994); *Clay Printing,* 955 F.2d at 942. In addition, DeNio's argument is further undermined by his failure to show a causal nexus between his dismissal and any of this evidence. *See Birbeck,* 30 F.3d at 511-12; *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1450 (10th Cir.1994) (employee must show nexus between employer's comment and adverse action toward him).

\* \* \* \* \*

Thus, we must conclude here, as we did in *Lovelace,* that "[a]ssessed independently of the [ *McDonnell-Douglas* ] presumption, we are satisfied that this circumstantial evidence does not suffice to support as a reasonable probability the inference that but for claim ant's age he would not have been" discharged. *Lovelace,* 681 F.2d at 243. Having considered DeNio's claim based simply on the direct and indirect evidence he put forth, we move now to determine whether he is entitled to the presumption of discrimination under the *McDonnell Douglas* scheme.

IV.

Under the original *McDonnell Douglas* scheme, an employee alleging race discrimination could establish a prima facie case by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which an employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas,* 411 U.S. at 802. Noting Justice Powell's admonition that the *McDonnell Douglas* test would vary in factually distinct Title VII contexts, *id.* at 802 n. 13, we have applied a modified version of the *McDonnell Douglas* scheme in the context of ADEA reduction in force cases. To establish a prima facie case, an ADEA plaintiff must show that (i) he is in the protected age class, (ii) he was discharged, (iii) at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations, and (iv) persons of his qualifications were retained in the same position or there was some other evidence that the employer did not treat age neutrally in deciding to dismiss plaintiff. [FN2] *See Herold,* 864 F.2d at 319; *Sailor v. Hubbell, Inc.,* 4 F.3d 323, 326 (4th Cir.1993).

> FN2. We have altered the language of this test's fourth prong to conform with the Supreme Court's recent decision in *O'Connor v. Consolidated Coin Caterers Corp.,* 64 U.S.L.W. 4243, 4244 (April 1, 1996), which held that a retained or replacement worker need not be outside of the complainant's protected class in order for the complainant to invoke the *McDonnell Douglas* presumption.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-02872-WMN   Document 66-5   Filed 03/15/2005   Page 5 of 10   Page 6 of 11

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 5

**\*\*5** It is undisputed that DeNio established the first three prongs of the prima facie test. DeNio was a member of the protected age group; he was discharged; and he satisfactorily performed his job at a level that met Asplundh's expectations. In considering the fourth prong, the district court found that no other person with DeNio's qualifications was retained in the same position as DeNio.

DeNio claims that this was error in view of the uncontroverted testimony that at the time of his discharge there were only three individuals in the parts call-in department: DeNio (age 53), Williams (age 29), and Taylor (age 30), and all three performed essentially the same tasks, the only differences being that DeNio was far more experienced, substantially better paid (a weekly rather than an hourly employee) and had limited supervisory responsibilities over the other two. DeNio asserts that since his parts call-in duties were assumed by Williams and Taylor, both of whom were under 40, and his supervisory duties were assumed by the person who had been his immediate supervisor, Gilbert, who was also under 40, these employees were "retained" by the company in the "same position" that DeNio had held and all of them were outside the protected age class.

The problem with this argument is that neither Williams, nor Taylor, nor Gilbert was retained in the same position that DeNio had occupied. DeNio's position was a worker in the parts call-in department with supervisory responsibilities (and commensurate salary benefits) over the two less experienced hourly employees in that department, Williams and Taylor. No one was retained in that position. Following DeNio's discharge, Williams and Taylor each retained their own positions as hourly-paid employees, without supervisory responsibilities or weekly pay and benefits, in the parts call-in department. Gilbert retained his own position as Call-In Supervisor and Rental Fleet Supervisor, supervising not only the parts call-in department but also the rental fleet department, just as he had before DeNio's discharge.

On appeal, DeNio seeks to emphasize the similarities between his position and those of Williams and Taylor, the other parts call-in department employees. He asserts that, in view of his minor supervisory responsibilities, Asplundh's testimony that it dismissed him because it wanted to eliminate a supervisory position is pretextual. However, DeNio's status as a supervisory employee, with a weekly salary and benefits, has been crucial to his case until now. In his complaint, he denominates himself as a "foreman" and asserts that he was the "oldest management employee" at the plant when he was fired. At trial, he solicited and relied on testimony that no other supervisor was contemporaneously terminated or demoted, that one employee was promoted to supervisor, that the company heralded a "youth trend" in its *management* team, and that the fifty-one year old plant *manager* was replaced by a twenty-nine year old man. DeNio testified in some detail to the hardship caused by the loss of his well-paying salaried position and his inability to obtain commensurate employment. He sought and obtained damages from the jury based on this loss. DeNio's present attempt to claim that he really was not a supervisor and should not be regarded as one is contrary to his own complaint and the evidence.

**\*\*6** In sum, DeNio failed to show that other employees were retained in his position. Moreover, for the reasons discussed in part III, there was no other evidence sufficient to meet the fourth element of the *McDonnell Douglas* prima facie test.

V.

For these reasons, the district court properly granted Asplundh's motion for judgment as a matter of law.

*AFFIRMED*

PAYNE, District Judge, dissenting:

As the holder of a jury verdict in his favor, DeNio is entitled to the benefit of all inferences which reasonably can be drawn from the facts proved at trial. I respectfully submit that the majority opinion does not extend to DeNio the benefits of the inferences to which he is entitled and, for the reasons set forth below, I would reinstate the jury's verdict and enter judgment on it for DeNio.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-02872-WMN   Document 66-5   Filed 03/15/2005   Page 6 of 10   Page 7 of 11

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 6

Before addressing the record respecting the termination of DeNio's employment, it is necessary briefly to sketch the context in which it occurred. In January 1993, Asplundh relocated its parts call-in department from the company's headquarters in Willow Grove, Pennsylvania to its Lynchburg facility where DeNio had been employed for several years. The parts call-in department fell under the jurisdiction of Richard Gilbert, age 38 (J.A. 49), whose title was Rental Fleet Supervisor (J.A. 118). Gilbert reported to Carl Paugh, who was 54 years old and served as General Manager of Asplundh's Equipment Department which was located at Asplundh's headquarters in Pennsylvania.

Although Asplundh does not assert that the termination of DeNio's employment was a part of a formal reorganization, reduction in force or other corporate restructuring, it is pertinent to know that, until January 1993, the parts call-in department was part of Asplundh's manufacturing division which was sold in early 1993. The employees in the manufacturing division lost their jobs upon completion of the sale. However, Paugh was assigned to Asplundh's headquarters and Gilbert was assigned to Asplundh's Lynchburg facility. In early 1993, Asplundh also closed its Des Moines, Iowa plant and laid off all employees there except the Des Moines plant manager, Mark Sharman, who took over in August 1993 as plant manager of the Lynchburg facility. (J.A. 163-66).

When Gilbert went to the Lynchburg facility in late 1992, Paugh decided to relocate the parts call-in department from Pennsylvania to Lynchburg. Paugh placed the department under Gilbert's control. (J.A. 167-68). At about the same time, DeNio's job as foreman in the aerial lift department at Lynchburg was eliminated. (J.A. 90). At Gilbert's direction, DeNio, who then was 53 years old and who had completed 27 years of satisfactory service in different capacities, was transferred to the parts call-in department. (J.A. 92, 168). Also at Gilbert's direction, DeNio selected Reginald Williams, age 29, and Anthony Taylor, who was 30, as the other two members of the department. (J.A. 92). All three men, who, until their transfer to the parts call-in department, were employed elsewhere in the Lynchburg facility, did essentially the same work: answering telephone calls respecting problems, mostly for other Asplundh employees, about Asplundh equipment. However, because DeNio was more experienced than Williams and Taylor, he also served as their supervisor. (J.A. 46, 50).

**7 In mid-August 1993, approximately one month before DeNio was fired, Asplundh demoted Jon Heffner, who was then 51, as plant manager at Lynchburg. Asplundh replaced Heffner with Sharman who was then 29. (J.A. 223). Also, in mid-August, Paugh had a general discussion with Gilbert about staffing levels because Asplundh was contemplating acquisition of another company and, if the acquisition materialized, many of the new employees would be located at the Lynchburg facility. (J.A. 170). That discussion produced a memorandum from Gilbert and Heffner to Paugh dated August 20 which, in pertinent part, stated:

> Jon [Heffner] and I feel that we are *overstaffed* in our parts call-in *department*. ... We recommend a *reduction of one person* in this department.

(J.A. 313) (emphasis added). The reason proffered to support that conclusion was:

> The men [DeNio, Williams and Taylor] that are fielding the phone calls are receiving about 50% product bulletin calls and 50% field unit calls. This percentage will change since the *calls on the product bulletin are gradually tapering off.*
> * * *
> Even though we realize that each person in this department must take a phone call, fill out a form ... and fax this information, we still believe that this *department is overstaffed.*

(J.A. 313) (emphasis added).

Eleven days later, on August 31, Paugh replied by memorandum addressed to Gilbert:

> I am in agreement with your assessment of the personnel requirements for the Call-In Service.
> * * *
> Please make the necessary arrangements to establish the work force at the desired level. (J.A. 314). These contemporaneous documents respecting staffing in the parts call-in department unambiguously reflect that, for both Gilbert and Paugh, the focus was on the total number of employees in the three-employee parts call-in department.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-02872-WMN   Document 66-5   Filed 03/15/2005   Page 7 of 10

Page 8 of 11

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 7

At about the same time, Asplundh went to press with the 65th anniversary issue of The Asplundh Tree, a company magazine that was distributed to 25,000 employees and customers. (J.A. 321-46). The first article in the publication is entitled "A Progress Report: Issues, Innovations and Improvements," which begins with the statement that: "Anniversaries are a good time to look back at past accomplishments, as well as at current issues, innovations and improvements." (J.A. 322). After cataloging information about growth of the company, the role of environmental issues, and the company market, the article declares: "Since 1988, there have been many changes in Asplundh's management team," including "17 retirements and more than 40 manager changes," some of which were attributable to the ascension of younger members of the Asplundh family. The article then states that:

> There has been [sic] *overall youth trend* with the *average age* of our management team being *44* years old. *Five years ago,* the *average age* was approximately *52*.

(J.A. 322) (emphasis added). [FN1]

> FN1. Kristin Wild, the author of this article testified that this passage referred only to members of the Asplundh family in top management (J.A. 282), but, on cross-examination, Wild's explanation for this interpretation was attacked vigorously. (J.A. 282-87). The jury, of course, was entitled to credit or reject Wild's testimony on this issue.

**8 At 4:00 p.m., on September 10, 1993, DeNio was summoned to Gilbert's office and, according to DeNio, Gilbert said:

> As of today you no longer work for the company. You're terminated.

(J.A. 54). When, DeNio asked the reason, Gilbert said: Because Carl Paugh says we've got to get rid of you, eliminate your job.

(J.A. 54). No further explanation was provided. (J.A. 109).

Aware that the company was in the process of hiring other employees, DeNio immediately offered to take any job, salaried or hourly. (J.A. 54). According to DeNio, Gilbert replied: "[w]ell, we're not going to hire you. We don't have nothing available." (J.A. 54). On the next work day, DeNio also told Sharman that: "I'll take any kind of hourly job, any kind of job you've got. I don't care whether it's cleaning toilets, you know." (J.A. 55). DeNio recounted Sharman's reply: "[w]ell, we don't have no jobs available." (J.A. 55). This reply struck DeNio as strange considering that, as DeNio exited Sharman's office (J.A. 55), he observed aspiring employees completing employment applications. Asplundh admits that, at the time, it was hiring new employees. (J.A. 231).

After DeNio left Asplundh's employment, Williams and Taylor continued to function in the same fashion as before. Gilbert assumed the supervisory responsibilities, such as they were, which DeNio had exercised over Williams and Taylor. (J.A. 62).

At the time of his termination, DeNio was the oldest management employee at the Lynchburg facility. (J.A. 49). However, at 53, DeNio was twelve years away from Asplundh's retirement age of 65. (J.A. 65). His annual salary was $36,000 per year. Taylor and Williams were hourly employees who earned about one-half that amount. (J.A. 63-64).

On October 5, 1993, DeNio filed an age discrimination complaint with the EEOC. Thereafter, Sharman, acting at the direction of his superior in Asplundh's headquarters, offered DeNio a position as second shift stockroom clerk at $10.00 per hour. However, the record is clear that the proffered position did not exist at the time it was offered or thereafter. (J.A. 220-21, 229). According to DeNio, he agreed to accept the job if he could continue to pursue the EEOC complaint, but Sharman refused. (J.A. 60-61). Sharman testified that no such condition was attached to the offer or was discussed. (J.A. 234).

At trial, Gilbert was called to testify by DeNio and by Asplundh. However, in neither appearance did Gilbert explain why he fired DeNio. Nor did Gilbert dispute DeNio's description of the conversation of September 10 in which he ended DeNio's employment. Indeed, Gilbert's cameo appearances served mostly to confirm that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:01-cv-02872-WMN   Document 66-5   Filed 03/15/2005   Page 8 of 10
Page 9 of 11

92 F.3d 1177 (Table)                                           Page 8
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

position which Sharman offered to DeNio did not exist at the time it was offered or subsequently. (J.A. 217, 220-21). Gilbert, however, denied that the offer for this non-existent position was conditioned on DeNio's withdrawal of the EEOC complaint. (J.A. 218).

**\*\*9** The only Asplundh witness who testified about the reason for terminating DeNio's employment was Paugh even though he conceded that it was Gilbert's decision and responsibility to make the personnel reduction in the parts call-in department (J.A. 131). Notwithstanding the exchange of correspondence between him and Gilbert in August which focused on the total number of employees in the department, Paugh asserted that the decision to fire DeNio was made because of the "cost of salaried supervision" in the parts call-in department. In fact, at one point in his testimony Paugh claimed that there were four salaried supervisors in the parts call-in department (J.A. 173), notwithstanding that all other evidence showed that the department consisted of only three employees: DeNio, Taylor and Williams, only one of whom had any supervisory duties and that Gilbert, the Rental Fleet Supervisor, was DeNio's supervisor. (J.A. 137). [FN2] Paugh also said that DeNio's supervising duties were eliminated and the rest of the people [e.g. Williams and Taylor] carried DeNio's load. (J.A. 141). Finally, Paugh made the ambiguous assertions that "I was reducing salary" (J.A. 147) and that DeNio's supervisory position was not needed (J.A. 174) because the call-in service department was overstaffed with supervisory people. (J.A. 175, 180).

> FN2. Asplundh makes a half-hearted assertion that Sykes was a supervisor even though Sykes testified that he was not. And, Asplundh suggests that Gilbert was a supervisor in the parts call-in department even though he actually was in charge of it as well as other operations at the Lynchburg facility and took on the supervision of Williams and Taylor after DeNio left. It is difficult to understand who it was that Paugh considered to be the fourth supervisor.

The rationale offered by Paugh, of course, was different than that reflected in the exchange of memoranda in August which defined the personnel problem as too many employees--not the number of, or the salary associated with, supervisory positions--in the department. Nor is it consistent with the fact that there were no supervisors in the call-in department in September of 1993 other than DeNio.

Finally, the undisputed record is that, at the time DeNio was fired and when he was asking for "any other employment"--salaried or otherwise--and for several months thereafter, Asplundh hired 19 people at the Lynchburg plant. (J.A. 175-76, 319). It is also undisputed that the company was prosperous and growing throughout the same period.

Taken as a whole and giving DeNio the benefit of all inferences, the record shows that, about the time that Asplundh fired DeNio, it announced as a significant development in the company that it had reduced the average age of management 8 years (52 to 44) during the 5 year period 1988 to 1993. The article reasonably can be interpreted as describing that result to be an "accomplishment" or an "improvement." Of course, it also can be interpreted to read as its author says it was intended (see n. 1, *supra*). However, that was for the jury to decide and, if the jury rejected the author's testimony, it was entitled to infer that age was a factor in Asplundh's decisions respecting the continued employment of managerial employees. Then one month before it fired DeNio, Asplundh demoted the 51 year old Lynchburg plant manager and replaced him with a 29 year old. It was in this context that the company released DeNio who, at the time, was the oldest remaining employee with managerial responsibilities at the Lynchburg plant. In perspective of the company's expressed view that a reduction in the average age of managers was an "accomplishment" or an "improvement" and its replacement of the 51 year old plant manager with a substantially younger person, the jury could infer that age was a motivating factor in the decision to fire DeNio.

**\*\*10** Those facts and inferences also must be considered in perspective of the proof that: (1) DeNio had served satisfactorily for 27 years in several capacities; (2) DeNio was the most knowledgeable and experienced of the three

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
**(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))**

Page 9

possible candidates for release in his department; and (3) DeNio was substantially older than the two employees whom Asplundh retained to do essentially the same job DeNio was doing. And, all of these facts must be assessed in perspective of the fact that the company refused DeNio's offers to accept any employment, salaried or hourly, at lower pay while, at the same time, it was hiring 19 other people.

These facts further support the already existing reasonable inference that DeNio's age was a motivating factor because employers usually find it is their best interest to retain experienced employees over less experienced ones. Further, where the more experienced employee has been a satisfactory performer (and lack of performance is not even an issue), it is reasonable to conclude that the decision to keep a younger, less experienced employee and to release a more experienced, satisfactory performer who is older is in part motivated by age. When this inference is considered in perspective of the other evidence, DeNio, I think, has made his case under either the direct or formulaic modes of proof available to an ADEA plaintiff. Under the direct evidence test, the evidence shows that age was a factor. Under the judicial burden shifting scheme, the evidence permits the inference that the employer did not treat age neutrally.

DeNio asserts that there is also evidence of age discrimination in the fact that his salary was twice that of the two employees in the department who were retained and, hence, that, in the decisional process, high salary was a euphemism for age. As the majority points out, Asplundh asserts on appeal that the higher cost of DeNio's salary was not a factor in the decision (which Asplundh contends to have been based solely on the theory that there were too many supervisors in the parts call-in department). That argument, of course, ignores completely Paugh's testimony which focuses on the high cost of supervisory salaries as the reason for the decision. Of course, if we hold Asplundh to the assertion which it makes on appeal, then DeNio's higher salary is not an issue.

If, however, we consider Paugh's testimony, DeNio's high salary was the motivating factor in Asplundh's decision. The majority says that, because of the decision in *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 608-09 (1993), dismissal for the purpose of reducing salary costs is not discrimination. If the only evidence offered by DeNio were the "analytically distinct" factor of DeNio's higher salary, I would agree that *Hazen* would preclude his claim. But, as explained above, the salary factor is but one facet of DeNio's proof. The balance of his evidence is the company's written acknowledgement, near the time of the discharge, that reduction in the age of management was an "accomplishment" or an "improvement" in the company's eyes; its action in demoting a 51 year old plant manager at DeNio's facility and replacing him with a man 27 years younger; its almost simultaneous decision to fire the oldest, most experienced man in the parts call-in department; and its refusal to re-employ him in any other job while hiring others in a time of corporate prosperity.

**\*\*11** Faced with that evidence, Asplundh was required, under either mode of proof scheme, to go forward to establish a legitimate nondiscriminatory reason for discharge. I think that the company utterly failed in that burden.

For example, notwithstanding Paugh's testimony that the departmental staffing decision was Gilbert's to make, Asplundh chose to base its defense on Paugh's testimony that DeNio was released because there was too many supervisors in the parts call-in department, pointing to DeNio, Sykes and Gilbert as the three supervisors. Sykes, of course, admitted that he was not a supervisor at all. Gilbert was not a supervisor *in* the department. Rather, he was in charge *of* the department because it fell within his area of responsibility in the organization of the Lynchburg plant. In fact, it was not until after DeNio left that Gilbert took on any supervision of Williams and Taylor. The employer's proffered reason is thus non-sensical on its face because there was only one supervisor in the parts call-in department--DeNio--and the employer did not say it needed no supervisors.

That is particularly the necessary result where, as here, the employer's contemporaneous business records documenting the personnel situation do not even mention an oversupply of supervisors, but instead refer only to the total number of employees.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92 F.3d 1177 (Table)
92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.))
**Unpublished Disposition**
(Cite as: 92 F.3d 1177, 1996 WL 423125 (4th Cir.(Va.)))

Page 10

[FN3] It is no wonder that the jury found the company's defense to be without support.

> FN3. In that regard, the jury was entitled to note that, although Gilbert was called to testify both by DeNio and Asplundh, the company never asked him to explain the contemporaneous business documents he authored which were the company's theory of defense at trial. That, of course, bears on the credibility of the company's defense.

That leaves Asplundh with the high-cost of supervisory salary theory as its non-discriminatory reason. If we overlook the previously identified frailties with this position (which, of course, Asplundh eschewed during oral argument so as to cling to the "excessive number of supervisors" theory), then Asplundh has tendered its nondiscriminatory reason.

However, DeNio has offered evidence that this high cost of supervisor salary theory is pretextual. He has shown, first, that the contemporaneous documents respecting staffing in the department simply do not even mention this as a reason for staff reductions. But, even if we interpret those documents as defining the sole motivation for the termination decision to be the high cost of supervisory salaries, then the theory is destroyed by DeNio's undisputed evidence that, on September 10 and 13, Asplundh refused DeNio's unconditional offers to accept any job while Asplundh, in a time of corporate plenty, hired 19 other people. Under those circumstances, the reason for the discharge is shown not to have been viable. On this record, a jury reasonably could have found that Asplundh's reason was pretextual and accepted that a, if not the, real reason for DeNio's discharge was his age which manifested itself as an irritant to the employer because of his high salary. When that factor is considered with the other evidence outlined above, the jury properly could return a verdict for DeNio. Hence, I respectfully submit that the verdict should be reinstated.

92 F.3d 1177 (Table), 1996 WL 423125 (4th Cir.(Va.)), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.