IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO.  WMN-01-2872 ) ) |
| WARFIELD-ROHR CASKET COMPANY, INC. | ) ) ) |
| Defendant. | ) ) |

**EEOC'S REPLY TO DEFENDANT'S RESPONSE AND OBJECTION TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Introduction

On February 25, 2005, the jury found that Defendant violated the Age Discrimination in Employment Act of 1967 ("the ADEA"). As a result, the equitable relief sought by the Commission, as provided by statute, is warranted. Accordingly, the Commission seeks from this Court equitable relief, including front pay, an injunction prohibiting any further discrimination based on age by Defendant, and an Order requiring Defendant to post Notices informing its workforce of their rights and remedies under the ADEA.

Defendant has opposed the Commission's request for equitable relief, arguing, once again, that Mr. Kuehnl failed to mitigate his damages (Defendant Br. 5-7).  Not only would Mr. Kuehnl's alleged failure to mitigate damages have no relevance to the imposition of relief ensuring that Defendant commit no further age discrimination and advising its workforce of this commitment, as discussed below, Mr. Kuehnl indeed mitigated his damages and is entitled to the equitable award of front pay.

1

<u>Argument</u>

I.     <u>KUEHNL ACTED REASONABLY TO MITIGATE HIS DAMAGES</u>

A.     <u>The Legal Standard</u>

In order to show that Mr. Kuehnl failed to mitigate his damages, Defendant had to prove

<u>both</u>: (1) a failure to use reasonable diligence <u>and</u> (2) that equivalent jobs to his former employment

were readily available.  <u>Clarke v. Frank</u>, 960 F.2d 1146, 1152 (2d Cir. 1992); <u>Odima v. Westin</u>

<u>Tucson Hotel</u>, 53 F.3d 1484, 1497 (9th Cir. 1995); <u>Coleman v. City of Omaha</u>, 714 F.2d 804, 808

(8th Cir. 1983).  Despite Defendant's three hours of cross examining Mr. Kuehnl on his mitigation

efforts, despite Defendant's argument to the jury that Mr. Kuehnl failed to mitigate, and despite

Defendant's detailed jury instructions on how to assess whether Mr. Kuehnl in fact mitigated, the

jury decided that Mr. Kuehnl indeed mitigated his damages. Simply put, Defendant failed to meet its

burden to prove that Mr. Kuehnl failed to mitigate. Even now, Defendant still fails to meet its

burden despite renewing this argument once again, this time in its Response to the Commission's

Proposed Findings of Fact and Conclusions of Law.

B.     <u>Starting His Own Business Was Reasonable</u>

The law only requires that Mr. Kuehnl use reasonable efforts to mitigate his damages.

<u>Brady v. Thurston Motor Lines, Inc.</u>, 753 F.2d 1269, 1273 (4th Cir. 1985); <u>Brooks v. Wookline</u>

<u>Motor Freight, Inc.</u>, 852 F.2d 1061, 1065 (8th Cir. 1988).  Here,  Mr. Kuehnl looked for jobs and

started his own business at the same time. He reasonably understood that the likelihood of

generating an adequate income from accepting an entry-level hourly position in a large company

such as Home Depot or Lowe's was far less than by starting his own business.  Though working as

an hourly employee at a large company apparently is acceptable mitigation efforts pursuant to

Defendant's standards, then so too must be starting a business under the circumstances here. Despite

Defendant's argument that starting one's own business cannot constitute adequate mitigation, it cites no authority for such argument. Indeed, in <u>Woodline Motor Freight</u>, <u>supra</u>, the court made clear that plaintiff's mitigation efforts were reasonable even though he stopped searching for employment after one month in order to start his own business and devoted his efforts to maintaining his business. No different result should apply here.

    C.    <u>Defendant Failed To Prove The Existence Of Casket Trimmer Jobs.</u>

 In order to succeed on its mitigation argument, Defendant also must show that jobs substantially equivalent to their former employment were available. <u>Ford Motor Company v. EEOC</u>, 458 U.S. 219, 231-32, 102 S. Ct. 3057, 3065-66 (1982). Defendant has failed to make this showing.

    That there were no positions available to Mr. Kuehnl comparable to the one he previously held is amply supported by the record. The undisputed facts in the record establish that Mr. Kuehnl could not have found a position comparable to the position he lost at Warfield.[1] Mr. Kuehnl has only a ninth-grade school education. He got his first casket trimming job at age 24. At the age of 28, Mr. Kuehnl joined Warfield and as a result of working hard and developing a high level of expertise in trimming caskets, he earned steady wage increases and annual bonuses until 1982, when he attained the management position of foreman of the casket trim room. Thereafter, he received a three per cent salary increase each year until a year before his termination. At the time of his willful termination, he was earning a little over $50,000 annually. Since Mr. Kuehnl's vocational experience was fairly narrow and he lacked a high school diploma, let alone a college degree, he was

---

[1]Defendant read the following from Mr. Ayres' deposition to the jury: "Question: 'Were you looking for someone who had experience in casket trimming?' Answer: 'No way. You couldn't find that in this area.' Question: 'Why not? Answer: 'There's no one around. There's no casket trimming done in this area.. None in Maryland.'"

3

not able to secure a position comparable in responsibility and compensation to his old one, despite a diligent job search.

The facts in this case are strikingly similar to the findings affirmed by the Sixth Circuit in Shore v. Federal Express Corporation, 42 F.3d 373 (6th Cir. 1994). Like Mr. Kuehnl, Shore discriminatorily was deprived of a job that paid significantly more than any job she was likely to secure in the future. Id. at 377. Accordingly, the district court ordered Federal Express to pay wages to Shore until she retired at age 65  – the difference between what she would have earned at the job she lost and what she could earn as a legal secretary, a job the court deemed "satisfactory mitigation" because it represented the most she was probably able to earn, given her formal qualifications, skills and experience. Id. Since an award of front pay in this case, like the one in Shore, would make Mr. Kuehnl whole without disregarding his duty to mitigate, this court should grant  EEOC's request as it is "well within the bounds of [the court's] discretion." Id. at 379.

Defendant is in a poor position to argue that Mr. Kuehnl failed to mitigate his damages or that the jury was unreasonable in its findings, because Defendant failed to offer any evidence that Mr. Kuehnl could secure a position comparable to his old one if he looked (and he did). Defendant failed to introduce any evidence showing that other employers in the Maryland area are likely to hire persons with Mr. Kuehnl's education, skills and experience for positions comparable to his former position as casket trimmer and foreman of the casket trim room, or even for any position that pays substantially more than his current self-employment. The only "evidence" Defendant introduced on this point was its attempt on cross-examination to challenge the reasonableness of Mr. Kuehnl's belief that his prospects of finding such a job were extraordinarily low. Thus all of the evidence in the record supports a finding that there are no comparable jobs available to Mr. Kuehnl.

4

In its brief, Defendant completely ignores that there were no comparable jobs available to Mr. Kuehnl (Defendant's Br. at 5), and points to no evidence in the record contradicting this fact. Instead Defendant argues that front pay should not be awarded because Mr. Kuehnl "had ample opportunity since his termination nearly five years ago to locate a job comparable to his position. . ." Defendant Br. at 5. That is not the law. As noted above, to establish a failure to mitigate a defendant must show both availability of suitable positions and failure to search. See Clarke, 960 F.2d at 1152; see also Odima, 53 F.3d at 1497 (defendant must show both availability of comparable jobs and plaintiff's lack of diligence); and EEOC v. Gurnee Inn Corp., 914 F.2d 815, 818 & n.4 (7th Cir. 1990) (same). Since Defendant failed to show the availability of comparable jobs, Defendant has again failed to meet its burden and the Court should award EEOC's request for a front pay award.

The Court in Xiao-Yue Gu v. Hughes Stx Corp., 127 F. Supp. 2d 751 (D. Md. 2001) and those of other circuits have affirmed front pay awards in similar factual circumstances. See, e.g., Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1188-89 (2d Cir.) (affirming front pay award of $667,000 to cover 17 years until plaintiff reaches 65, based on jury's assessment of plaintiff's prospects of securing suitable employment), cert. denied, 506 U.S. 826 (1992); Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 954-56 (1st Cir. 1995) (affirming front pay award of $745,000 based on finding that plaintiff would be unable to find professional employment in the future); Pierce v. Atchison, Topeka & Santa Fe Ry. Co., 65 F.3d 562, 574-75 (7th Cir. 1995) (affirming 10-year front pay award to age 65, based on evidence that plaintiff, a senior analyst, would be unable to find anything other than minimum-wage work).

In arguing that EEOC's request for front pay should be denied because it would result in a windfall for Mr. Kuehnl, Defendant relies primarily on Ford v. Rigidply Rafter, Inc., 984  F. Supp.

386 (D. Md. 1997). There, the court noted that the record was vague regarding the plaintiff's prospects in finding comparable employment. Accordingly, it held in that particular case, that one year of front pay was reasonable. Here, the record regarding Mr. Kuehnl's prospects of finding comparable employment was well developed. Moreover, the presumably much younger sexual harassment victim in Ford would have an easier time than Mr. Kuehnl of securing comparable employment first, because of their relative ages, and second, because the Ford plaintiff earned under $20,000 at the time of termination.

The purpose of requiring mitigation is to ensure that a victim of discrimination does not obtain a windfall by receiving compensation for losses he could avoid through the exercise of reasonable diligence. See Suggs v. ServiceMaster Education Food Management, 72 F.3d 1228, 1233 (6th Cir. 1996). Requiring a plaintiff to search for nonexistent employment does nothing to accomplish the purposes of mitigation. See Shore, 42 F.3d at 378 (affirming district court front pay award based on the premise that the plaintiff "had no duty to spend time seeking comparable employment that probably was nonexistent").[2]

II.    THE EEOC IS ENTITLED TO EQUITABLE RELIEF

Once a finding of discrimination is made, the Court has the duty to render an order that will eliminate ageist discriminatory effects of the past and bar such discrimination in the future. Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975); Holsey v. Armour & Co., 743 F.2d 199, 218 (4th Cir. 1983), cert. denied, 470 U.S.1028 (1985). The EEOC seeks entry of an injunction, pursuant to Section 7of the ADEA, 29 U.S.C § 626(b), which incorporates section 217 of the Fair

---

[2]The Commission also takes issue with Defendant's distorted recital of the testimony at trial. For example, Mr. Kuehnl did not "voluntarily" leave the workforce or move to his "retirement" home with the intention to continue a "hobby." Defendant's Br. at 3 -5. In any event, as noted above, Defendant's arguments did not resonate with jury; nor should they here.

Labor Standards Act of 1938 as amended.

A.    An Injunction And Notice Posting Are Appropriate

The EEOC seeks entry of an injunction against Defendant to enjoin it from further engaging in any practice that discriminates against employees or applicants because of their age. See United States v. Gregory, 871 F.2d 1239, 1246-47 (4th Cir. 1989) ("no discretion to deny injunctive relief completely"), cert. denied, 493 U.S. 1020 (1990); Howard v. Ward County, 418 F. Supp. 494, 505-06 (D. N.D. 1976). In light of the fact that the jury found that Defendant fired Mr. Kuehnl in reckless disregard of the ADEA, the EEOC also requests that this Court order that appropriate notice be given to all employees outlining the steps Defendant plans to take in order to ensure future compliance with the ADEA. EEOC v. Corinth, Inc., 824 F. Supp. 1302, 1312-1313 (N.D. Ind. 1993); EEOC v. FLC & Bros. Rebel, Inc., 663 F. Supp. 864, 871 (W.D. Va. 1987), aff'd, 846 F.2d 70 (4th Cir. 1998)(unpublished).

B.    Front Pay Should Be Awarded to Mr. Kuehnl

As part of the make whole remedy of the ADEA, the EEOC seeks recovery of front pay, less projected interim earnings, for Mr. Kuehnl. Front pay simply compensates Mr. Kuehnl – the discrimination victim– for wages that he would have received upon reinstatement. It is used only when the court determines that reinstatement is not appropriate, often due to continued hostility toward the victim. In this case, because reinstatement would result in undue friction or a dysfunctional workplace, front pay should be awarded. Duke v. Uniroyal, Inc., 928 F.2d 1413, 1423-25 (4th Cir. 1991)("notwithstanding the desirability of reinstatement, intervening historical circumstantial can make it impossible or inappropriate"); Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir. 1980) (five years front pay granted instead of reinstatement because of the employer's hostility toward the victim); Gries v. Zimmer, Inc., 795 F. Supp. 1379, 1384 (W.D. N.C.

7

1992) (finding animosity created by litigation makes reinstatement inadvisable).  In this case, the EEOC asserts three years is a reasonable period of front pay.  See Fitzgerald.

At trial, the EEOC presented expert testimony regarding Mr. Kuehnl's projected earnings absent the discrimination, minus projected interim earnings.  In calculating Mr. Kuehnl's monthly salary, EEOC's expert testified that Mr. Kuehnl would have continued to earn an annual increase and bonus equal to the annual increase and bonus he had been earning when he was fired.  In challenging the damage calculations, Defendant argues that the expert's "assumption was not supported by any testimony." Defendant  Br. at 8.   However, it is not speculative for the Court to award front pay to Mr. Kuehnl based on projected earnings which includes increases and bonuses at a level Mr. Kuehnl had previously been earning. See Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350, 1364 (11th Cir. 1994)(district court did not abuse its discretion when it relies on testimony of plaintiff's expert).  Defendant cites McKnight v. General Motors Corp., 973 F.2d 1366 (7th Cir. 1992) as support for its position that EEOC's front pay damages are unduly speculative.  However, McKnight is supportive of EEOC's case in that it shows that when applying a standard used by courts to decide front pay awards, EEOC provided all the essential data necessary to calculate a reasonably certain front pay award in this case.  Specifically, in McKnight, the court held:

> We also note that when a party fails to provide the district court with the essential data necessary to calculate a reasonably certain front pay award, the court may deny the front pay request. Coston, 831 F.2d at 1335, & n. 6.  Such information includes the amount of the proposed award, the length of time the plaintiff expect to work for the defendant, and the applicable discount rate.  Id.  Moreover, front pay awards, while often speculative, cannot be unduly so.  The longer a proposed front pay period, the more speculative the damages become.  Hybert v. Heart Corp., 900 F.2d 1050, 1056 (7th Cir. 1990).

Id. at 1372 (emphasis added).  Unlike the race discrimination victim in McKnight, who provided no

basis for calculating an appropriate front pay award, EEOC's expert, Dr. Tun, provided very specific evidence at trial supporting EEOC's claim for front pay in this case.

Front pay was calculated from the date of judgment until August 2008, when Mr. Kuehnl planned to retire, and then discounted to present value. <u>Wells v. North Carolina Bd. of Alcoholic Control</u>, 714 F.2d 340, 342 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1044 (1984). Dr. Tun testified that he calculated front pay and discounted it to a present day value of $229,919.90. (EEOC Trial Exh. 5). Dr. Tun testified that the discount rate he used in his calculation was four percent compounded monthly. Defendant also argues against this award based on Mr. Kuehnl's alleged failure to mitigate. Despite Defendant's vigorous and repetitive arguments, they are still insufficient to meet Defendant's burden.

Mr. Kuehnl testified that he applied to numerous places, but they were not hiring. In a two-year period, he applied for jobs at 82 different places. (EEOC Trial Exh.13). Additionally, he sought positions from other establishments that had not advertised available positions. Defendant cites to no case which hold that similar efforts to find alternate work were deemed insufficient or inadequate. <u>Cf</u>. <u>Walters v. City of Atlanta</u>, 803 F.2d 1135 (11th Cir. 1986)(plaintiff failed to mitigate because he sought no position other than the one discriminatorily denied him).

Defendant also argues that Mr. Kuehnl's decision to move to Delaware was improper because in doing so "he has voluntarily withdrawn from the workforce." Defendant Br. at 6. Mr. Kuehnl was not prevented from finding comparable employment by his move to Delaware, however. He continually sought work. He made telephone calls, read want ads, and attended interviews. When he found no leads or offers, he started a his business. Self-employment is a reasonable alternative to finding other alternative employment. <u>Smith v. Great American Restaurants, Inc.</u>, 969 F.2d 430, 439 (7th Cir. 1992); <u>see also</u> <u>Carden v. Westinghouse Electric Corp.</u>, 850 F.2d 996 (3d

Cir. 1988); <u>Brooks v. Woodline Motor Freight, Inc.</u>, 852 F.2d 1061, 1065 (8th Cir. 1988). Indeed,

"[t]he notion that starting one's own business cannot constitute comparable employment for

mitigation purposes not only lacks support in the cases, but has a distinctly un-American ring."

<u>Smith</u>, 969 F.2d at 438.

Conclusion

In this case, there are ample grounds for the Court to award the EEOC's request for

equitable relief. For the foregoing reasons and for the reasons stated in the Proposed Findings of Fact

and Conclusions of Law, Court should enter the equitable relief requested by the EEOC.

DATED: 3/21/05                          Respectfully submitted,

                                        GERALD S. KIEL
                                        Regional Attorney


                                        DEBRA M. LAWRENCE
                                        Supervisory Trial Attorney


                                        _____/s/_____
                                        REGINA M. ANDREW
                                        Trial Attorney
                                        EQUAL EMPLOYMENT
                                        OPPORTUNITY COMMISSION
                                        Baltimore District Office
                                        10 S. Howard Street, 3rd Floor
                                        Baltimore, Maryland 21201
                                        Tel.: (410) 962-4220