IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | * * * * |
| Plaintiff, | * Civil Action No. WMN-01-2872 |
| v. | * * * |
| WARFIELD-ROHR CASKET COMPANY, INC. | * * |
| Defendant. | * * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT WARFIELD-ROHR CASKET COMPANY, INC.'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT
AS A MATTER OF LAW AND/OR FOR A NEW TRIAL AND/OR FOR REMITTITUR**

Defendant, Warfield-Rohr Casket Company, Inc. ("Warfield-Rohr") submits this Reply Memorandum in support of its Motion for Judgment as a Matter of Law and/or for a New Trial and/or for Remittitur.

**INTRODUCTION**

The evidence presented at trial showed that Mr. Kuehnl's age had nothing to do with Warfield-Rohr's decision to terminate his employment. The primary reasons for Mr. Kuehnl's termination were Warfield-Rohr's precipitous drop in business in 1998-1999 and the accompanying need to cut costs; the fact that the amount of work in the trimming room had not justified three employees for at least two years; and Mr. Kuehnl's refusal to operate the trimming room with only one other person.

The EEOC cannot rebut these dispositive facts. Instead, in its Opposition, the EEOC attempts to divert the Court's attention to peripheral issues and is forced to

mischaracterize both the facts and the law in an effort to convince the Court to let the jury's verdict stand.

As shown below, and in Warfield-Rohr's Memorandum of Law in Support of Its Motion for Judgment as a Matter of Law and/or for New Trial ("Warfield-Rohr's Memo"), the undisputed facts entitle Warfield-Rohr to judgment as a matter of law. Moreover, when all of the facts are considered, the evidence demonstrates overwhelmingly that Mr. Kuehnl's age was not a factor in his termination. Therefore, at a minimum, Warfield-Rohr is entitled to a new trial.

## DISCUSSION

I. **THE EEOC'S CONTENTION THAT MR. KUEHNL WAS AN EXEMPLARY EMPLOYEE IS FACTUALLY WRONG AND MISSES THE POINT.**

The basic factual premise of the EEOC's Opposition is that Mr. Kuehnl was an exemplary employee who was never told he was doing a bad job. The EEOC is wrong. For example, the EEOC claims:

> Throughout his employment, Defendant, Mr. Kuehnl, was a hard worker. He kept contemporaneous logs of his trimming work. These reflect that, right up until his termination, he worked long hours, including weekends and nights, to ensure that work was completed on time.

Opposition at 3. Not only did the EEOC fail to put on any evidence to support this statement, the statement is demonstrably false with respect to the time period at issue in this case (i.e., the last few years of his employment). The EEOC never offered Mr. Kuehnl's journal into evidence. The only excerpts of Mr. Kuehnl's journal that are in evidence were offered by Warfield-Rohr. The logical inference to be drawn from the EEOC's failure to introduce into evidence, or otherwise utilize, Mr. Kuehnl's journal is that it would not have supported its argument. However, the Court need not rely on this inference.

Mr. Kuehnl conceded that in the last few years of his employment, he was not working long hours. He admitted that he came in early and left early to accommodate his own schedule (to take his wife to work at a nearby hospital) and that he would often come in the middle of the night so that he could leave at 10:00 or 11:00 a.m. to meet the builder of his retirement home at the Delaware shore. Warfield-Rohr's testimony was uncontradicted that the company did not want Mr. Kuehnl to work odd hours, and told him that he needed to be at work during normal business hours. Warfield-Rohr Memo at 11-13.

The undisputed evidence elicited at trial paints a far different picture of Mr. Kuehnl than is portrayed in the EEOC's Opposition. Indeed, the facts are:

- Mr. Kuehnl admitted that over the last two years he worked at Warfield-Rohr, he only spent a fraction of his time working in the trimming room;

- Of the time Mr. Kuehnl did spend in the trimming room, Mr. Moore and Ms. Skenderovic testified Mr. Kuehnl spent very little time working. Instead, Mr. Kuehnl spent most of this time watching television;

- Mr. Moore & Ms. Skenderovic threatened to quit because of Mr. Kuehnl's refusal to work;

- Warfield-Rohr's vice-president, Michael Osmeyer, told Mr. Kuehnl repeatedly that he needed to be at work during regular business hours and do his job;

- In response to one of his conversations with Mr. Osmeyer, Mr. Kuehnl said that he thought that "work was supposed to get easier as you got older."

- Mr. Kuehnl admitted that his work relationship and personal relationship with Mr. Ayres deteriorated over the last two years of his employment; and

- Mr. Kuehnl admitted he had problems working with trimming room employees over the years (several of whom testified to that effect at trial).

Mr. Kuehnl, therefore, was not a model employee as the EEOC claims.

The EEOC's portrayal of Mr. Kuehnl – though clearly wrong – is almost beside the point. While the foregoing problems certainly influenced the decision to terminate Mr. Kuehnl, the driving forces behind his termination were Warfield-Rohr's financial problems, the fact that the trimming room had become a two person operation, and Mr. Kuehnl's refusal to work in the trimming room with only one other person.

If Warfield-Rohr had not suffered financial problems, and/or if Mr. Kuehnl had been willing to run the trimming room as a two person operation, Mr. Kuehnl likely would not have been terminated, notwithstanding his other performance issues. However, the evidence is incontrovertible that Warfield-Rohr suffered severe financial difficulties during the years 1998 and 1999; the work in the trimming room did not justify three employees; and Mr. Kuehnl refused to operate the trimming room with one other person. Warfield-Rohr Memo at 3-4; Defendant's trial exhibit 1.

These are precisely the reasons for Mr. Kuehnl's termination – as corroborated by both Mr. Ayres' contemporaneous notes and Mr. Kuehnl's journal (Defendant's trial exhibits 3 and 5). As the EEOC acknowledges in its Opposition, cost-cutting is a legitimate, non-discriminatory reason for terminating an employee. Opposition at 10. Indeed, it is sufficient as a matter of law. (Warfield-Rohr's Memo at 9-11; 13-15).

Nevertheless, the EEOC attempts to side-step the dispositive effect of these undisputed facts and the applicable law by claiming that there is no justification for finding that Mr. Kuehnl should have been the employee in the trimming room to be terminated. The EEOC claims it is Warfield-Rohr's fault for hiring a third person in the trimming room in early 1998 after Mr. Eisenhardt quit, despite the fact that Mr. Kuehnl insisted a third person be hired. Opposition at 10.

The EEOC's argument is absurd for two reasons. First, as the working foreman in the trimming room, Mr. Kuehnl should bear the responsibility for improvidently demanding that a third person be hired in his department. Second, Mr. Kuehnl's refusal to operate the trimming room with only one other person[1] compelled Warfield-Rohr to terminate <u>him</u>, particularly in light of the fact that Mr. Kuehnl: 1) made more money than the other two trimming room employees combined; 2) had a history of driving away employees; 3) had alienated his current co-workers to the point where they threatened to quit because he was watching television instead of doing his job; 4) no longer was getting along with management; and 5) was spending only a fraction of his time working in the trimming room. Warfield-Rohr Memo at 11-13.

The EEOC attempts to cast doubt on Warfield-Rohr's motivation for terminating Mr. Kuehnl based on the timing of his termination and the fact that Mr. Moore was much younger than Mr. Kuehnl:

> Further, it remains particularly troubling that Defendant waited until Mr. Kuehnl fully trained his younger replacement before terminating him.

Opposition at 10. Again, the EEOC is playing fast and loose with the facts. Mr. Moore was hired to replace Mr. Eisenhardt, <u>not</u> Mr. Kuehnl. Mr. Kuehnl was never replaced. The EEOC also seems to forget that Mr. Kuehnl was responsible – in every respect – for hiring Mr. Moore. Mr. Ayres did not want to hire a replacement for Mr. Eisenhardt in the trimming room. Mr. Kuehnl insisted a replacement be hired. Mr. Kuehnl rejected every candidate proposed by Mr. Osmeyer for the position and placed an advertisement in his local paper to fill the position. Mr.

---

[1] Even as of the day he testified at trial, Mr. Kuehnl believed the trimming room required three employees. This belief was undoubtedly based on Mr. Kuehnl's desire to spend more time building his retirement home at the Delaware shore.

Kuehnl personally selected Mr. Moore. It is not Warfield-Rohr's fault that Mr. Moore was younger than Mr. Kuehnl when Mr. Kuehnl was the person who picked Mr. Moore.

Moreover, Warfield-Rohr did not simply wait for Mr. Moore to be trained and then terminate Mr. Kuehnl as the EEOC suggests. Mr. Kuehnl testified at trial that Mr. Moore was trained after six months (i.e., September 1998). Mr. Kuehnl was not terminated until April 2000, more than 18 months later. Mr. Kuehnl was only terminated: 1) <u>after</u> Warfield-Rohr had suffered financial setbacks in 1998 and 1999; 2) <u>after</u> Mr. Kuehnl had alienated the people actually performing the work in the trimming room by watching television instead of doing his job; 3) <u>after</u> Mr. Kuehnl had been warned about his conduct repeatedly by management[2]; and 4) <u>after</u> Mr. Kuehnl's relationship with Mr. Ayres had deteriorated. Warfield-Rohr Memo at 11-13. Therefore, contrary to the EEOC's suggestion, the timing of Mr. Kuehnl's termination demonstrates that he was terminated for non-discriminatory reasons.

---

[2] The EEOC's assertion that Mr. Kuehnl was never given negative feedback is simply false. (See Warfield-Rohr Memo at 11-13, 15; Defendant's trial exhibit 9). Similarly, the EEOC's claim that Mr. Kuehnl's performance problems were "undocumented" is of no moment. Warfield-Rohr is a tiny company which did not have written performance evaluations (which Mr. Kuehnl admitted at trial), and did not document employee problems. Contrary to the EEOC's assertion in its Opposition (p. 7) that Mr. Ayres documented such problems, there was no such testimony presented. In any event, there is no question that Mr. Kuehnl was told of his problems. (See Warfield-Rohr Memo at 11-13, 15; Defendant's trial exhibit 9). Therefore, the cases cited by the EEOC in its Opposition at pp. 7-8 are inapposite.

II. **THE EEOC FAILS TO REBUT KEY CASES CITED BY WARFIELD-ROHR AND IS OTHERWISE UNSUCCESSFUL IN DISTINGUISHING THE APPLICABLE LAW.**

The EEOC attempts to distinguish two cases relied upon by Warfield-Rohr, Blistein v. St. John's College [3] and DeNio v. Asplundh Tree Expert Company [4], primarily because they do not involve allegations of ageist statements. Opposition at 10-11. Obviously, neither Blistein nor DeNio is a mixed motive case, such as the case at bar, and Warfield-Rohr is not relying on them in that regard. Instead, Warfield-Rohr relies on these cases for the proposition that terminating a high salaried employee in order to cut costs is a legitimate and non-discriminatory reason. Mr. Kuehnl admitted at trial that he believed one of the reasons he was terminated was that the company could no longer afford him. Blistein and DeNio hold that such a reason is legitimate and non-discriminatory even if it correlates with years of service or age. Blistein at 265; DeNio at 3; Warfield-Rohr Memo at 10.

Warfield-Rohr does rely in its Memo on three mixed motive cases, Adler v. Madigan, 939 F.2d 476, 479-80 (7th Cir. 1991); Abioye v. Sundstrand Corporation, 164 F.3d 364, 369 (7th Cir. 1998); and Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1084-85 (11th

---

[3]  860 F. Supp. 256 (D. Md. 1994), aff'd, 74 F.3d 1459 (4th Cir. 1996), overruled, in part, on other grounds, by Adams v. Moore Business Forms, Inc., 224 F.3d 324 (4th Cir. 2000).

[4]  1996 WL 423125 (4th Cir. 1996) (unpublished). The EEOC attempts to dismiss the DeNio case because it is unpublished. As discussed in Warfield-Rohr's Memo, because the facts of DeNio are so similar to the case at bar, DeNio is of precedential value here. Moreover, this Court has cited DeNio in Malina v. BG&E, 28 F. Supp. 2d 596, 607 (D. Md 1998) as have the other federal courts. Warfield-Rohr Memo at 7, n.2. The EEOC also attempts to distinguish DeNio by claiming that Mr. DeNio's employer offered him another position in the company when he was terminated. Opposition at 11. The EEOC is wrong. Although the employer claimed it had offered Mr. DeNio another job, the fourth circuit assumed no such offer had been made, and considered the issue irrelevant: "…the jury was not entitled to infer from the company's refusal to consider him [DeNio] for an alternate position, that it had discharged him because of age." DeNio at 3.

Cir. 1996). These cases establish that where the evidence of a legitimate, non-discriminatory reason for terminating an employee is overwhelming and/or unrebutted, as it is here, judgment as a matter of law is appropriate even assuming evidence of a discriminatory motivation. Id.; Warfield-Rohr Memo at 18-19. The EEOC does not even mention these mixed motive cases in its Opposition because it cannot distinguish them. Indeed, the holdings in these three cases are dispositive here. Warfield-Rohr Memo at 18-19.

The EEOC does attempt to distinguish the line of fourth circuit cases relied upon by Warfield-Rohr (Warfield-Rohr Memo at 15)[5] for the proposition that a court should not substitute its judgment for that of an employer making an employment decision. Opposition at 12-13. The only basis, however, on which the EEOC attempts to distinguish these cases is that Mr. Kuehnl allegedly did not receive negative feedback from Warfield-Rohr. As mentioned above, Mr. Kuehnl was told repeatedly over the last few years of his employment by Mr. Osmeyer and Mr. Ayres that he was not doing his job and that he needed to do his job. Therefore, the EEOC's attempt to distinguish these cases fails, and Warfield-Rohr's legitimate decision to terminate Mr. Kuehnl should not be second-guessed.

### III. EEOC'S ARGUMENT THAT WARFIELD-ROHR'S EXEMPLARY RECORD WITH RESPECT TO OLDER WORKERS IS IRRELEVANT IS FACTUALLY AND LEGALLY INCORRECT.

Warfield-Rohr's position that it terminated Mr. Kuehnl for non-discriminatory reasons is buttressed by the composition of its workforce, its treatment of older workers, and its hiring practices. Warfield-Rohr showed at trial that at the time of Mr. Kuehnl's termination,

---

[5]  Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir 1995); Hawkins v. Pepsico, Inc., 203 F.3d 274, 282 (4th Cir. 2000); DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998).

three-quarters of Warfield-Rohr's employees were over 40 years old, and more than one-third of its workforce was older than Mr. Kuehnl. The EEOC responded in its opposition by claiming:

> Defendant, in fact, never offered statistics into evidence, but rather simply testified to them in counsel's closing argument.

Opposition at 14. The EEOC's response is puzzling since Warfield-Rohr not only produced Mr. Osmeyer to testify at trial about the composition of Warfield-Rohr's workforce, but it also submitted as Defendant's trial exhibit 2, a list of all its employees working at the time Mr. Kuehnl was terminated, which list included the date of birth for every employee. Mr. Osmeyer also testified that over the last 20 years, eight employees retired from Warfield-Rohr, and that in 1998, 1999, and 2001 individuals _older_ than Mr. Kuehnl were hired by Warfield-Rohr. Accordingly, the statistics to which the EEOC refers are in evidence.

The EEOC attempts to dismiss these probative statistics by claiming that Warfield-Rohr's "workforce is too small to render any such analysis significant." Opposition at 13. The EEOC provides no support for this ridiculous statement. The fact is that these statistics show that Warfield-Rohr treats its employees well, and does not use age as a criteria for firing or hiring. Indeed, the EEOC conveniently ignores the fact that as part of Warfield-Rohr's cost-cutting measures in 2000 when Mr. Kuehnl was terminated, it also terminated a 37 year old salesman, Chip Graumlich. The evidence at trial was clear that Warfield-Rohr based its employment decisions on performance and willingness to work, not age. Mr. Osmeyer testified that everyone at Warfield-Rohr, including Mr. Ayres and the other employees older than Mr. Kuehnl, were working harder than ever and did not share Mr. Kuehnl's belief that "work was supposed to get easier as you got older."

Finally, the EEOC claims that Warfield-Rohr's exemplary record is legally irrelevant. The fourth circuit disagrees. In <u>Birbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 513 (4th Cir. 1994), the fourth circuit held the fact that an employer hired a 54 year old worker at the time it allegedly made a discriminatory statement to the 62 year old plaintiff, and that several years earlier it had hired a 60 year old worker, was "significant" in determining whether an employer's stated economic justification for terminating the plaintiff was pretextual. The employer, Marvel, was a small company facing severe financial problems similar to those Warfield-Rohr faced in 1998 and 1999. The <u>Birbeck</u> Court affirmed the trial court's granting of judgment as a matter of law after a jury verdict in favor of plaintiff holding:

> The ADEA was not intended to obstruct the ability of a
> commercial enterprise to make necessary adjustments in
> the face of economic challenges. Marvel's layoff decisions
> here reflected business realities, not age discrimination…"

<u>Id</u>. The same result is mandated here.

## IV. THE EEOC FAILS TO DISTINGUISH BETWEEN THE STANDARD OF REVIEW FOR A MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL.

As shown above, and in its Memo, Warfield-Rohr is entitled to judgment as a matter of law. Based on the undisputed evidence Warfield-Rohr terminated Mr. Kuehnl for legitimate, non-discriminatory reasons, even assuming the existence of some improper animus. <u>See</u> Warfield-Rohr Memo at 11-19. The Court need not judge credibility or weigh evidence to reach this result. <u>Id</u>.

However, in the event that the Court disagrees with Warfield-Rohr's position with respect to its motion for judgment as a matter of law under Federal Rule 50, Warfield-Rohr would still be entitled to a new trial for the same reasons under the less stringent standard of

review under Federal Rule 59. Warfield-Rohr Memo at 19-23. In addition, under Federal Rule 59, Warfield-Rohr is free to argue that it is entitled to a new trial because Mr. Ayres never made the purportedly ageist remarks attributed to him by Mr. Kuehnl. Id. at 20-22. The EEOC claims that Warfield-Rohr cannot make this argument because: "Nothing supports Defendant usurping the function of the jury on this issue of credibility." Opposition at 14. The EEOC is wrong. In considering Warfield-Rohr's motion for a new trial, the Court not only is permitted to consider the credibility of the witnesses, it must do so. Swentek v. U.S. Air, Inc., 830 F.2d 552, 559 (4th Cir. 1987) (Weighing the evidence and considering the credibility of witnesses "is not a discretionary task, but a duty, as our cases have repeatedly emphasized.").

Nowhere in its Opposition does the EEOC state the standard of review for evaluating a motion for a new trial. The EEOC misstates the standard and claims the Court cannot evaluate the credibility of witnesses because it knows Mr. Kuehnl's testimony cannot withstand such scrutiny. Mr. Kuehnl's own journal entries about the pivotal conversations with Mr. Ayres do not contain the two statements which are the linchpin of the EEOC's case – "You are too old" and "We'll see about that." Warfield-Rohr Memo at 21-23; Defendant's trial exhibits 5 and 24.

The EEOC's attempt to explain away these omissions is factually incorrect and illogical: "[Mr. Kuehnl] made clear that entries in his journal, while not always complete and verbatim, were true and were sufficient to jog his own memory." Opposition at 14. First, Mr. Kuehnl testified at trial that he tried to be as accurate as possible in his journal and to write down what people told him word-for-word. Warfield-Rohr Memo at 22. Second, the EEOC's contention that Mr. Kuehnl's journal entries "were sufficient to jog his own memory" is nonsensical. How could statements which do not appear in Mr. Kuehnl's journal jog his

11

memory? The EEOC appears to suggest that Mr. Kuehnl's recollection of his conversations with Mr. Ayres was better in 2005, when he testified at trial, than in 2000, when the conversations took place and Mr. Kuehnl recorded them in his journal. This cannot be the case.

It is simply incredible that an experienced businessman like Mr. Ayres would make the statements attributed to him by Mr. Kuehnl. But it is even more incredible that, if Mr. Ayres had made such statements, Mr. Kuehnl – a man who recorded every type of minutiae in his journal – would fail to write these statements down. Warfield-Rohr Memo at 22. Indeed, when weighing Mr. Kuehnl's testimony and the mountain of evidence establishing the non-discriminatory reasons for Mr. Kuehnl's termination (Warfield-Rohr Memo at 11-13), the Court can only come to one conclusion: Warfield-Rohr did not discriminate against Mr. Kuehnl.

V. **EVEN IF THE COURT DOES NOT GRANT WARFIELD-ROHR'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR A NEW TRIAL BECAUSE THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE, THE COURT STILL MUST GRANT A NEW TRIAL BECAUSE THE JURY'S VERDICT WAS BASED ON FALSE INFORMATION (DR. TUN'S REPORT), THE JURY INSTRUCTIONS WERE IMPROPER, AND MR. KUEHNL FAILED TO MITIGATE HIS DAMAGES.**

A. **The Court Must Grant a New Trial Because the Jury's Verdict was Based on False Information.**

As Warfield-Rohr explained in its Memorandum (pp. 23-28), the Court must grant a new trial because the expert report submitted by Dr. Tun, as well as his testimony, was admittedly wrong. The EEOC's response in its Opposition is, essentially, that the opinion was only "a little bit wrong." Once again, the EEOC is incorrect. The EEOC claims Dr.Tun's only mistake was that he failed to account for the severance payments which Warfield-Rohr made to Mr. Kuehnl. Opposition at 17-18. The EEOC seems to forget that in addition to failing to account for the severance payments, Dr. Tun erroneously assumed that Mr. Kuehnl received a

raise in 2000, and improperly calculated his 2000 salary which formed the foundation for his back pay calculation and his pension calculation.

Moreover, Dr. Tun erroneously assumed a 3% salary increase every year in his back pay calculation. Contrary to the EEOC's statement in its Opposition (p. 16), Dr. Tun did not base his 3% increase on a 17 year average of Mr. Kuehnl's salary increases. Instead, as Dr. Tun testified in response to the Court's question, he only had <u>five</u> years of salary information for Mr. Kuehnl, one of which Dr. Tun admitted he got wrong. Therefore, Dr. Tun's assumption of a 3% raise is unsupportable and is a significant error because it compounded throughout his calculations.

In addition, Dr. Tun made numerous other errors including double counting benefits as an element of damage and using unrealistic interest rates which greatly distorted the damage calculation. Dr. Tun also based his pension calculation on the assumption that Mr. Kuehnl had worked until age 65, not through the date of trial. Accordingly, there is an impermissible component of front pay included in his calculations. Warfield-Rohr Memo at 27.

None of these errors were minor. Dr. Tun was not able to provide the jury with a correct statement of damages while on the witness stand. And neither he nor counsel for the EEOC explained to the members of the jury how they could correct Dr. Tun's errors. Indeed, one question submitted by the jury during deliberation was whether it had to calculate a specific amount of damages. Court exhibit 2. Accordingly, the jury was hopelessly misled by Dr. Tun's expert report and testimony, and a new trial must be granted on that basis alone.

### B. <u>The Jury Instructions Were Improper.</u>

Likewise, the Court's instructions to the jury on liability form an independent basis to grant a new trial because it was error to provide <u>McDonnell Douglas</u> and mixed motive

13

instructions to the jury, particularly since the EEOC could not establish a claim under McDonnell Douglas as a matter of law. Warfield-Rohr Memo at 28-30, l7-10. The EEOC claims that Warfield-Rohr failed to provide support for this position. Once again, the EEOC is wrong. On pages 28-29 of its Memorandum, Warfield-Rohr cites Fuller v. Phipps[6] and Griffiths v. Cigna Corp.[7] which hold that a court must decide between the two liability theories and present only one to the jury. Fuller at 1142-43; Griffiths at 472.

The EEOC also claims that the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148 (2003) permits the submission of a mixed motive instruction based on circumstantial evidence. Opposition at 20. That claim is also incorrect. As the fourth circuit stated in the appeal in this case, Desert Palace applies only to Title VII cases and "direct evidence is still a prerequisite for a mixed motive analysis in ADEA cases." EEOC v. Warfield-Rohr Casket Company, Inc., 364 F.3d 160, 164, n.1 (4th Cir. 2004); See also, Mereish v. Walker, 359 F.3d 330, 339-40 (4th Cir. 2004); Warfield-Rohr Memo at 29, n.13.

The EEOC fails to even address in its Opposition Warfield-Rohr's argument that it is also entitled to a new trial because the Court failed to give Defendant's proposed jury instructions 28, 29 and 30. Warfield-Rohr Memo at 30. For all of these reasons, the Court should grant a new trial.

**C. Mr. Kuehnl Failed to Mitigate His Damages.**

Yet another independent reason for the Court to grant a new trial is the jury's

---

[6]   67 F.3d 1137, 1142-43 (4th Cir. 1995), abrogated on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148 (2003).

[7]   988 F.2d 457, 472 (3rd Cir. 1993), partially overruled on other grounds, Miller v. Cigna Corp., 47 F.3d 586 (3rd Cir. 1995).

excessive verdict and the fact that it did not consider Mr. Kuehnl's failure to mitigate his damages.  It is well established that a plaintiff cannot recover back pay if he is not actively seeking employment.  e.g., Miller v. AT&T Corp., 250 F.3d 820, 838 (4th Cir. 2001).  Mr. Kuehnl admitted he only looked for work during two discrete time periods when he was collecting unemployment.  He testified that he only looked for work during these periods because it was a requirement for receiving unemployment compensation.  Mr. Kuehnl's search was limited almost exclusively to jobs for which he knew he was not qualified, because he was not actually trying to find a job.  Instead, Mr. Kuehnl wanted to start his own business.  Warfield-Rohr Memo at 32-33.

Although starting one's own business could be a legitimate way of mitigating damages, such efforts must be "bona fide, reasonable and made in good faith."  Cline v. Roadway Express, Inc., 689 F.2d 481, 489 (4th Cir. 1982); Warfield-Rohr Memo at 34.  Mr. Kuehnl's efforts, however, were not reasonable, bona fide or made in good faith.  Mr. Kuehnl's upholstery "business" was merely an extension of his longtime upholstery hobby.  As Mr. Kuehnl admitted at trial, he did not actually start his business in earnest until 2004, four years after he was terminated, which in and of itself is unreasonable.  Warfield-Rohr Memo at 34-36.

Therefore, Mr. Kuehnl made no meaningful effort to mitigate his damages and cannot be entitled to the damages awarded to him by the jury.[8]  Accordingly, the Court must grant a new trial.

---

[8]  The EEOC states in its Reply to Defendant's Response and Objection to Plaintiff's Proposed Findings of Fact and Conclusions of Law that Warfield-Rohr must show that substantially equivalent work was available.  Under the circumstances of this case, the EEOC is wrong.  There is no such obligation where the "plaintiff makes little or no effort to seek employment."  Wagner v. Dillard Department Stores, Inc., 17 Fed. Appx. 141,

(continued...)

**CONCLUSION**

Based on the foregoing, and the arguments set forth in Warfield-Rohr's Memo, the Court should grant Warfield-Rohr's motion for judgment as a matter of law, and conditionally grant Warfield-Rohr's motion for a new trial.

          Respectfully submitted,

          _____/s/ Charles S. Hirsch_____
          Charles S. Hirsch
          Ballard Spahr Andrews & Ingersoll, LLP
          300 E. Lombard Street, 18th floor
          Baltimore, Maryland 21202
          (410) 528-5600

          Attorney for Defendant

---

(...continued)
    2001 WL967495 at 10 (4th Cir. 2001) (unpublished decision) (citing EEOC v. Service News Co., 898 F2d 958, 963 (4th Cir. 1990)); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2nd Cir. 1998) ("An employer …is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment.); Sellers v. Delgado Community College, 839 F.2d 1132, 1139 (5th Cir. 1998) (same).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April 2005 a copy of the foregoing Defendant Warfield-Rohr Casket Company, Inc.'s Reply Memorandum in Support of Its Motion for Judgment as a Matter Of Law and/or for a New Trial, and/or for Remittitur was electronically served on:

>Regina M. Andrew, Esquire
>Equal Employment Opportunity Commission
>Baltimore District Office
>10 South Howard Street
>Third Floor
>Baltimore, Maryland 21201

        ___/s/ Charles S. Hirsch_____
        Charles S. Hirsch